**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

**In re:** **Case No. 26-15967-PDR**

**CRAFT CONSTRUCTION COMPANY LLC,** **Chapter 11**

**Debtor.**
_________________________________/

**NOTICE OF FILING DECLARATION OF BARRY CRAFT, MANAGER OF THE DEBTOR, IN SUPPORT OF THE CHAPTER 11 PETITION AND FIRST DAY RELIEF**

**PLEASE TAKE NOTICE** that Craft Construction Company LLC, as debtor and debtor-in-possession in the above-captioned Chapter 11 case, hereby files the *Declaration of Barry Craft, Manager of the Debtor, In Support of the Chapter 11 Petition and First Day Relief* (the "**First Day Declaration**"), which is attached hereto as **Exhibit A.**

**PLEASE TAKE FURTHER NOTICE** that the First Day Declaration is being filed in support of the following filings:

- *Expedited Motion for Entry of Order (I) Authorizing Postpetition Financing, Effective as of the Petition Date; (II) Granting Superpriority Administrative Expense Claim and Liens; (III) Approving Repayment Terms; and (IV) Granting Related Relief* (Dkt. No. 46);
- *Application of Debtor for Authority to Retain and Employ Shelomith Law and Edelboim Lieberman, PLLC as Bankruptcy Co-Counsel for the Debtor* (Dkt. No. 47); and
- *Debtor-in-Possession's Emergency Motion for Entry of an Order (1) Authorizing Use of Cash Collateral Effective as of the Petition Date; (2) Granting Adequate Protection; and (3) Scheduling a Final Hearing* (Dkt. No. 48).

*(Remainder of Page Left Intentionally Blank)*

**Dated: June 2, 2026**

**EDELBOIM LIEBERMAN PLLC**
*Proposed Co-Counsel for the Debtor*
2875 NE 191st St., Penthouse One
Miami, FL 33180
Telephone: (305) 768-9909
Facsimile: (305) 928-1114
Email: brett@elrolaw.com
Email: alex@elbizlaw.com

*/s/ Alexander Lewitt*
Brett D. Lieberman, Esq. (FBN 69583)
Alexander Lewitt, Esq. (FBN 1048121)

**CERTIFICATE OF SERVICE**

I HEREBY certify that a true and correct copy of the foregoing was served on June 2, 2026 by Notice of Electronic Filing to all parties registered to receive electronic notification via CM/ECF notification (which is incorporated herein by reference).

*/s/ Alexander Lewitt*
Alexander Lewitt, Esq.

# **Exhibit A**

**First Day Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

**In re:**

**CRAFT CONSTRUCTION COMPANY LLC,**

**Debtor.**
__________________________________/

**Case No. 26-15967-PDR**

**Chapter 11**

**DECLARATION OF BARRY CRAFT, MANAGER OF THE DEBTOR, IN SUPPORT OF THE CHAPTER 11 PETITION AND FIRST DAY RELIEF**

I, Barry Craft, pursuant to Section 1746 of Title 28 of the United States Code, hereby declare that the following is true and correct to the best of my knowledge, information, and belief:

1. I am the Manager of Craft Construction Company LLC (the "**Debtor**"), the debtor and debtor-in-possession in the above-captioned Chapter 11 case. I am authorized to submit this declaration (the "**First Day Declaration**") on behalf of the Debtor.

2. On May 7, 2026 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtor continues to operate its business and manage its affairs as debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in this Chapter 11 case as of the date of this First Day Declaration.

3. I submit this First Day Declaration in support of the Debtor's Chapter 11 petition and the motions and application filed in connection with the Debtor's request for first day and related relief, including the: (i) *Expedited Motion for Entry of Order (I) Authorizing Postpetition Financing, Effective as of the Petition Date; (II) Granting Superpriority Administrative Expense Claim and Liens; (III) Approving Repayment Terms; and (IV) Granting Related Relief* (Dkt. No. 46) (the "**Financing Motion**"); (ii) *Application of Debtor for Authority to Retain and Employ*

*Shelomith Law and Edelboim Lieberman, PLLC as Bankruptcy Co-Counsel for the Debtor* (Dkt. No. 47) (the "**Employment Application**"); and (iii) *Debtor-in-Possession's Emergency Motion for Entry of an Order (1) Authorizing Use of Cash Collateral Effective as of the Petition Date; (2) Granting Adequate Protection; and (3) Scheduling a Final Hearing* (Dkt. No. 48) (the "**Cash Collateral Motion**", and together with the Financing Motion and Employment Application, the "**First Day Motions**").

4. In my capacity as Manager, I am generally familiar with the Debtor's day-to-day business operations, business and financial affairs, contracts, books and records, project obligations, and relationships with lenders, sureties, subcontractors, suppliers, and other parties in interest. Except as otherwise indicated, the facts set forth in this First Day Declaration are based upon my personal knowledge, my review of relevant documents and information, my discussions with the Debtor's management, employees, professionals, and advisors, and my experience, knowledge, and information concerning the Debtor's operations and financial condition. References to the Bankruptcy Code, the Chapter 11 process, and related legal matters are based on my understanding of such matters. If called upon to testify, I would testify competently to the facts set forth in this First Day Declaration.

## I. <u>The Debtor's Business</u>

5. The Debtor operates as a South Florida based construction company headquartered at 480 S. Andrews Avenue, Suite 103, Pompano Beach, Florida 3306The Debtor provides construction management, design build, general contracting, pre-construction consulting, remodeling, new construction, and facility management services for commercial and specialized construction projects.

6. In the ordinary course of its business, the Debtor contracts with project owners and relies on subcontractors and suppliers to provide the labor, materials, equipment, supervision, and trade work necessary to complete its construction projects. The Debtor's revenues are derived primarily from progress payments, retainage, change-order proceeds, and claim proceeds earned under its construction contracts.

7. The Debtor is a bonded general contractor with numerous active construction projects throughout Florida. A substantial portion of the Debtor's contracts are bonded by Berkley Insurance Company ("**Berkley**") as surety. The Debtor's ability to perform construction contracts, maintain bonding relationships, and coordinate payments to subcontractors and suppliers is essential to preserving the Debtor's business and going concern value.

8. The Debtor's primary assets include alleged accounts receivable for work performed on its contracts, retainage, claim and change order proceeds, office furniture, fixtures, equipment, and four operating and project bank accounts maintained at Truist Bank ("**Truist**") that had an aggregate balance on the Petition Date of approximately $293,000.00.

9. The Debtor's operations depend on access to working capital and cash generated from its projects. Without access to cash collateral and ordinary-course project receipts, the Debtor would be unable to pay subcontractors, suppliers, payroll, insurance, utilities, and other operating expenses necessary to continue performance under its contracts.

## II. Key Events Leading to Chapter 11

10. The Debtor commenced this Chapter 11 case to stabilize its business operations, preserve going-concern value, protect the value of its contracts and project receivables, and obtain the protections and tools afforded by the Bankruptcy Code while it seeks to reorganize.

11. Prior to the Petition Date, the Debtor maintained a revolving line of credit with Truist identified in the loan documents as Loan No. 00035, in the stated principal amount of $3,000,000.00. As of the Petition Date, approximately $50,000.00 was outstanding under that facility, subject to reconciliation and Truist's rights.

12. Also prior to the Petition Date, the Debtor had surety and indemnity arrangements with Berkley in connection with the Debtor's bonded construction work. On or about May 4, 2026, the Debtor, Berkley, and Cashin Spinelli & Ferretti, LLC, as funds manager, entered into a Funds Control Agreement. On or about the same date, the Debtor issued an irrevocable Letter of Direction relating to the District 225 Condominium bonded project.

13. The Debtor's construction business requires the prompt payment of project costs, including subcontractor and supplier obligations and payroll. The Debtor's cash needs are ongoing and time-sensitive because work on construction projects continues, project expenses come due continuously, and any interruption in funding could harm the Debtor's ability to perform its contracts and preserve estate value.

14. In these circumstances, the Debtor filed this Chapter 11 case and now seeks entry of orders that will allow the Debtor to continue operating, retain necessary bankruptcy counsel, use cash collateral on an interim and final basis, and regularize and resolve an inadvertent postpetition draw under the Truist line of credit.

## III. <u>The First Day Motions</u>[1]

[1] The Debtor has also filed *Expedited Motion of Debtor for Interim and Final Orders Authorizing the Payment of Prepetition Obligations to Critical Subcontractors and Suppliers* (Dkt. No. 36) (the "**Critical Vendors Motion**"), as supplemented by the *Notice of Filing Corrected Critical Vendors List* (Dkt. No. 43) and *Notice of Filing Supplement Declaration of Barry Craft in Support of Expedited Motion of Debtor for Interim and Final Orders Authorizing the Payment of Prepetition Obligations to Critical Subcontractors and Suppliers* (Dkt. No. 52).

15. In furtherance of the Debtor's reorganization efforts, the Debtor has sought approval of the First Day Motions, and respectfully requests that the Court consider granting the First Day Motions. For the avoidance of doubt, the Debtor seeks authority, but not direction, to pay amounts or satisfy obligations with respect to the relief requested in any of the First Day Motions.[2]

16. I have reviewed each of the First Day Motions, Proposed Orders, and exhibits thereto, or have otherwise had their contents explained to me, and the facts set forth therein are true and correct to the best of my knowledge, information, and belief. I believe the relief sought in each of the First Day Motions is necessary and appropriate, will minimize interruption and disruption to the Debtor's business, and constitutes a critical element of the Debtor's ability to preserve and maximize value for the benefit of its estate and creditors.

## A. Employment Application

17. By the Employment Application, the Debtor seeks entry of an order authorizing the retention and employment of Zach B. Shelomith, Esq. and Shelomith Law, and Brett D. Lieberman, Esq. and Edelboim Lieberman PLLC, as bankruptcy co-counsel to the Debtor (collectively, the "**Bankruptcy Co-Counsel**"). The Debtor seeks retention of Shelomith Law and Edelboim Lieberman PLLC, subject in each case to Court approval.

18. Prior to the commencement of this Chapter 11 case, the Debtor sought the services of Shelomith Law in connection with insolvency related advice, negotiations with creditors, preparation for the commencement and prosecution of this Chapter 11 case, and related restructuring matters. The Debtor also consulted with Edelboim Lieberman PLLC prior to the

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the applicable First Day Motions.

Petition Date, and engaged Edelboim Lieberman PLLC on or about May 25, 2026 to assist in the continued prosecution of this Chapter 11 case.

19. Continued representation of the Debtor by proposed Bankruptcy Co-Counsel is critical to the efficient administration of this Chapter 11 case and the Debtor's reorganization efforts. The Debtor's proposed Bankruptcy Co-Counsel are familiar with the Debtor's financial and legal affairs and are well positioned to represent the Debtor promptly and effectively. The Debtor selected the proposed Bankruptcy Co-Counsel because of their experience with business reorganizations, Chapter 11 proceedings, debtor representation, creditor negotiations, litigation, and related insolvency matters.

20. The Debtor seeks to retain the proposed Bankruptcy Co-Counsel to provide a broad range of legal services necessary in this Chapter 11 case, including advising the Debtor with respect to its powers and duties as debtor-in-possession, attending meetings and negotiations with creditors and other parties-in-interest, advising on cash collateral, postpetition financing, operations, claims, estate administration, litigation, preparing pleadings and other case documents, and negotiating and preparing a plan of reorganization and related documents.

21. The Employment Application provides that the Debtor's proposed Bankruptcy Co-Counsel will coordinate their efforts and staffing to avoid unnecessary duplication of services, will maintain separate detailed time records, and will prepare and file separate fee applications as required by the Bankruptcy Code, Bankruptcy Rules, Local Rules, and applicable orders of the Court. In my judgment, this co-counsel arrangement is appropriate and will make sufficient resources available to advance the Debtor's case efficiently.

22. As reflected in the Retention Application and supporting declarations, Shelomith Law's hourly rates for this engagement are $625.00 per hour for Zach B. Shelomith, Esq., $425.00

per hour for other attorney time, and $200.00 to $285.00 per hour for paraprofessionals. Edelboim Lieberman PLLC's customary hourly rates are $675.00 per hour for partners and $225.00 to $675.00 per hour for other attorneys and paralegals. Prior to the Petition Date, the Debtor provided Shelomith Law with a fee and cost retainer in the amount of $65,000.00, of which $58,024.50 remained as of the Petition Date after application of $6,975.50 to prepetition fees and expenses. The Debtor also seeks authority to provide Edelboim Lieberman PLLC with a postpetition fee and cost retainer in the amount of $50,000.00.

23. I have been advised that, to the best of the proposed Bankruptcy Co-Counsel's knowledge, the proposed co-counsel do not hold or represent an interest adverse to the Debtor's estate and are disinterested persons within the meaning of the Bankruptcy Code, except as disclosed in the Employment Application and supporting declarations. Based on the Debtor's familiarity with proposed Bankruptcy Co-Counsel, their experience in Chapter 11 matters, and the disclosures contained in the supporting declarations, I believe that retention of proposed co-counsel is necessary and appropriate and in the best interests of the Debtor and its estate.

**B. <u>The Financing Motion</u>**

24. By the Financing Motion, the Debtor seeks entry of an order approving and ratifying an inadvertent postpetition advance under the Debtor's prepetition revolving line of credit with Truist, approving the return of a portion of that advance, authorizing repayment of the remaining postpetition advance, and granting related relief.

25. Before the Petition Date, the Debtor maintained a revolving line of credit with Truist in the stated principal amount of $3,000,000.00. As of the Petition Date, approximately $50,000.00 was outstanding under the line of credit, subject to reconciliation. After the Petition Date, the Debtor inadvertently drew $500,000.00 from the line of credit without first obtaining

Court authorization or giving notice to Truist of the bankruptcy case. The draw was not made with an intent by the Debtor or Truist to circumvent the Bankruptcy Code, the Bankruptcy Rules, or this Court's authority.

26. Thereafter, Truist, also inadvertently and at the Debtor's direction, coordinated the return of $250,000.00 of the postpetition draw. As a result, $250,000.00 of postpetition credit remains outstanding under the line of credit. The Debtor and Truist have negotiated a consensual resolution of that remaining postpetition advance.

27. Subject to Court approval, the proposed resolution provides Truist with a superpriority administrative expense claim and a lien limited solely to the remaining $250,000.00 postpetition advance, plus interest at the non-default contract rate provided in the Truist loan documents and any allowed fees, costs, and expenses chargeable under the Truist loan documents and applicable law. The Debtor is not seeking authority to draw additional funds under the Truist line of credit through the Postpetition Financing Motion, and the Debtor is not seeking to roll up Truist's prepetition claim or grant superpriority administrative expense status to the prepetition Truist debt.

28. The proposed repayment structure provides for six (6) monthly payments of $25,000.00, followed by a final balloon payment of the remaining balance, together with accrued and unpaid interest and allowed fees and costs, on the earlier of six (6) months from the date of an order granting the Postpetition Financing Motion or the effective date of a confirmed Chapter 11 plan. In my judgment, this structure is reasonable and tailored to the circumstances because it regularizes the inadvertent postpetition advance, avoids unnecessary litigation, preserves the Debtor's liquidity, and provides a clear repayment path while limiting enhanced priority treatment to the net postpetition credit that remains outstanding.

C. <u>The Cash Collateral Motion</u>

29. By the Cash Collateral Motion, the Debtor seeks authority to use cash collateral on an interim and final basis, effective as of the Petition Date, in order to fund the continued operation of its business and preserve the value of the estate.

30. Truist and Berkley may assert liens and security interests in certain personal property of the Debtor and its proceeds. Truist may assert liens and security interests in, among other things, accounts, inventory, furniture, fixtures, equipment, general intangibles, insurance proceeds, instruments, documents, chattel paper, and proceeds and products thereof. Berkley may assert rights and interests arising from its surety and indemnity documents and related financing statement in connection with the Debtor's bonded contracts. The Debtor, its estate, any statutory committee, and other parties in interest reserve all rights to contest the validity, extent, priority, perfection, enforceability, or characterization of asserted liens, claims, assignments, and interests as provided in the Cash Collateral Motion and proposed order.

31. The Debtor's cash generated from business operations may constitute cash collateral within the meaning of Section 363(a) of the Bankruptcy Code. The Debtor requires the use of cash collateral to continue operating in the ordinary course, including to pay subcontractors, suppliers, payroll, insurance, utilities, and other expenses attendant to performance of its contracts. Without access to cash collateral, the Debtor would be forced to discontinue operations, risk defaults under bonded contracts, lose revenue, impair relationships with project owners, subcontractors, suppliers, and its surety, and substantially diminish the value of the estate.

32. The Cash Collateral Motion proposes adequate protection to Truist in the form of a continuing postpetition replacement lien on property of the same kind and character as Truist's prepetition collateral, to the extent of any postpetition diminution in the value of Truist's interest

in the cash collateral resulting from the Debtor's use thereof. The Debtor does not propose monthly cash adequate protection payments to Truist at this time because the outstanding prepetition balance under the Truist line of credit is approximately $50,000.00, the Debtor believes Truist is amply secured, and the Debtor reserves the right and intends to pay the Truist obligation in full in the ordinary course or within a reasonable period following entry of a final cash collateral order.

33. The Cash Collateral Motion also proposes adequate protection to Berkley, subject to Berkley's asserted position and all reservations of rights, including a continuing postpetition replacement lien, a project sub-account or funds control regime for bonded contract proceeds, preservation of Berkley's subrogation, equitable, and indemnity rights, and procedures to ensure that valid Florida construction trust fund obligations are paid before any net proceeds are treated as cash collateral of the secured lenders. Because Berkley's claim is contingent and unliquidated and no bond losses had been paid as of the Petition Date, the Debtor does not propose monthly cash adequate protection payments to Berkley at this time.

34. The Debtor's proposed use of cash collateral is limited by the budget attached to the Cash Collateral Motion, subject to the variances described in the Motion and proposed order. In my judgment, the proposed use of cash collateral and adequate protection arrangements are fair and reasonable, reflect the Debtor's sound business judgment, and are necessary to allow the Debtor to preserve estate value while it seeks to reorganize.

## IV. <u>Conclusion</u>

35. The First Day Motions seek authority that is critical to the Debtor's business operations and to the continuation of the Debtor's operations in the ordinary course with as little interruption as possible on account of the commencement of this Chapter 11 case. I believe that

the relief requested in the First Day Motions is necessary to give the Debtor an opportunity to work toward a successful restructuring that will inure to the benefit of all stakeholders.

36. I am familiar with the content and substance of each of the First Day Motions. I believe approval of the relief sought in each of the First Day Motions is critical to the Debtor's ability to successfully implement its Chapter 11 strategy, preserve contracts and project value, maintain necessary relationships with lenders, sureties, subcontractors, suppliers, employees, and project owners, and maximize the value of the Debtor's estate for the benefit of all parties in interest.

37. I hereby certify that the foregoing statements are true and correct to the best of my knowledge, information, and belief, and respectfully request that all of the relief requested in the First Day Motions be granted.

**Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.**

**Dated: June 1, 2026**

Barry Craft