**ORDERED in the Southern District of Florida on July 13, 2026.**

**Craig A. Pugatch, Judge**
**United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

| | |
|---|---|
| **In re:** | **Case No. 26-15967-CAP** |
| **CRAFT CONSTRUCTION COMPANY LLC,** | **Chapter 11** |
| **Debtor.** | |

______________________________________/

**FINAL ORDER GRANTING DEBTOR-IN-POSSESSION'S EMERGENCY MOTION FOR ENTRY OF AN ORDER (1) AUTHORIZING USE OF CASH COLLATERAL EFFECTIVE AS OF THE PETITION DATE; (2) GRANTING ADEQUATE PROTECTION; AND (3) SCHEDULING A FINAL HEARING**

**THIS MATTER** having come before the Court on June 24, 2026 at 10:00 A.M. (ET) upon the *Debtor-in-Possession's Emergency Motion for Entry of an Order (1) Authorizing Use of Cash Collateral Effective as of the Petition Date; (2) Granting Adequate Protection; and (3)*

*Scheduling a Final Hearing* (Dkt. No. 48) (the "**Motion**")[1] and *Interim Order Granting Debtor-In-Possession's Emergency Motion for Entry of an Order (1) Authorizing Use of Cash Collateral Effective as of the Petition Date; (2) Granting Adequate Protection; and (3) Scheduling a Final Hearing* (Dkt. No. 99) (the "**Interim Order**"); and the Court, having reviewed the Motion, the proposed budget attached to the Motion as **Exhibit F** (the "**Budget**"), the agreement of the Debtor and the Secured Lenders (defined below), having considered the record established at the interim hearing held on June 3, 2026 and the final hearing held on June 24, 2026, having heard the proffers and argument of counsel, and being otherwise fully advised in the premises, finds that (i) the Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding under 28 U.S.C. § 157(b)(2); (iii) venue is proper under 28 U.S.C. §§ 1408 and 1409; (iv) notice of the Motion and the relief requested herein is adequate and appropriate under the circumstances; (v) the Debtor has demonstrated that immediate and irreparable harm would result without authority to use Cash Collateral; (vi) entry of this Final Order is in the best interests of the Debtor, its estate, and its creditors; and (vii) good and sufficient cause exists for the relief granted herein, it is

**ORDERED**, as follows:

1. The Motion is **GRANTED** on a final basis on the terms set forth in this Final Order, effective as of the May 7, 2026 (the "**Petition Date**").

2. All the provisions set forth in this Final Order are expressly subject to Berkley's asserted position, as set forth in paragraph 7 of the Motion, that, in accordance with the Funds Control Agreement and the Letter of Direction, read in conjunction with the underlying loan and indemnity documents referenced above, all unpaid Contract Balances on the subject bonded

[1] Capitalized terms used herein but otherwise undefined shall have the meanings ascribed to them in the Motion.

contract, have been absolutely, not collaterally, assigned to Berkley and are owned by Berkley. Nothing in this Final Order shall constitute a finding, admission, or acknowledgment by the Debtor or the estate as to the validity, extent, priority, perfection, enforceability, or characterization of any such assignment or of Berkley's asserted ownership interest, and the Debtor and all other parties-in-interest expressly reserve all rights to contest the same pursuant to the Challenge Rights set forth below.

3. **Authority to Use Cash Collateral; Budget; Permitted Variance.** The Debtor is authorized, pursuant to 11 U.S.C. § 363(c)(2), to use Cash Collateral (as defined in 11 U.S.C. § 363(a)) in the ordinary course of its business, effective as of the Petition Date and continuing through and including June 24, 2026 in accordance with the Budget. The Debtor may exceed the line items of the Budget only as follows: (a) up to five percent (5%) per non-project line item; (b) up to ten percent (10%) per line item for direct project costs (subcontractors, materials, and labor) on the Bonded Contracts; and (c) up to ten percent (10%) in the aggregate of the total Budget. Debtor shall provide to Secured Lenders and to the United States Trustee bi-weekly budget-to-actual reports. The Debtor shall submit successor budgets to counsel for the Secured Lenders by the 25th day of each month for the succeeding calendar month.

4. **Replacement Liens.** As adequate protection under 11 U.S.C. §§ 361 and 363(e) for the Debtor's use of Cash Collateral, each of Truist Bank ("**Truist**") and Berkley Insurance Company ("**Berkley**") (each, a "**Secured Lender**" and collectively, the "**Secured Lenders**") is hereby granted a continuing post-petition replacement lien (each a "**Replacement Lien**") on all property of the Debtor and its estate, whether now owned or hereafter acquired (collectively, the "**Post-Petition Collateral**"), of the same kind, character, validity, and priority as the Secured Lender's respective pre-petition liens, but only to the extent of any post-petition diminution in the

value of such Secured Lender's interest in its pre-petition collateral resulting from the Debtor's use of Cash Collateral. The Replacement Liens shall not extend to (a) Trust Funds (as defined below) while held in any Project Sub-Account (as defined below); (b) the proceeds of any avoidance action arising under chapter 5 of the Bankruptcy Code; or (c) the Carve-Out (as defined below).

5. **Superpriority Claims.** To the extent that the Replacement Liens prove insufficient to compensate for any diminution in value of a Secured Lender's interest in the Cash Collateral, each Secured Lender shall have an allowed superpriority administrative-expense claim against the Debtor's estate pursuant to 11 U.S.C. § 507(b), having priority over all other administrative expense claims that are not superpriority administrative claims (the "**Superpriority Claims**"), subject in each case to the Carve Out. The Superpriority Claims shall not extend to the proceeds of any avoidance action arising under Chapter 5 of the Bankruptcy Code.

6. **Adequate Protection - Truist.** Given that (a) the outstanding pre-petition balance under the Truist line of credit is approximately $50,000.00 as of the Petition Date, (b) Truist is over secured due to the value of the Debtor's receivables and equipment subject to the Truist UCC, and (c) the Debtor intends to pay the residual Truist balance in full in the ordinary course or within a reasonable period following entry of this Final Order, no monthly cash adequate-protection payments are required at this time. Truist reserves the right to request additional adequate protection upon notice and a hearing if circumstances change. Truist shall have the right to inspect its collateral upon reasonable notice to Debtor and shall have the right to review Debtor's financials as permitted under the documents evidencing the Truist line of credit.

7. **Adequate Protection - Berkley; Florida Construction Trust Funds.** All progress payments, retainage, change-order proceeds, and claim proceeds that are now or that hereafter

become due or payable to the Debtor in respect of any contract bonded by Berkley (collectively, the "**Bonded Contract Proceeds**") constitute, upon receipt, trust funds for the benefit of the subcontractors, suppliers, and other beneficiaries of such trust under Fla. Stat. § 713.345 (collectively, the "**Trust Funds**"). The Debtor shall maintain, at a depository acceptable to the Office of the United States Trustee, a separate debtor-in-possession sub-account for each Bonded Contract (each a "**Project Sub-Account**"); provided, however, (a) all progress payments, retainage, change-order proceeds, and claim proceeds on District 225 Condominium Project will be deposited into the Funds Control Account Agreement, with disbursements made first to satisfy valid Trust Fund claims under Fla. Stat. § 713.345 and Berkley's subrogation/equitable rights, and the net amount thereafter remitted to the Debtor's operating account as Cash Collateral, and (b) all progress payments, retainage, change-order proceeds, and claim proceeds on all other Bonded Contracts will be deposited into a Project Sub Account, with disbursements made first to satisfy valid Trust Fund claims under Fla. Stat. § 713.345 and Berkley's subrogation/equitable rights, and the net amount thereafter remitted to the Debtor's operating account as Cash Collateral.

8. All Bonded Contract Proceeds shall be deposited into the Funds Control Account Agreement or the Project Sub-Account immediately, as applicable, upon receipt. Funds in a Project Sub-Account shall be used first to pay valid Trust Fund obligations relating to the underlying Bonded Contract (in accordance with Fla. Stat. § 713.345). After all valid Trust Fund obligations relating to a particular requisition under a Bonded Contract have been paid in full, the net amount remaining in the applicable Project Sub-Account with respect to that requisition (the "**Net Amount**") may be transferred to the Debtor's operating account, at which point such Net Amount shall constitute Cash Collateral of the Secured Lenders. No transfer shall be made from a Project Sub-Account to the operating account except as expressly permitted in this paragraph or by further

Order of this Court. No Secured Lender shall exercise any right of setoff or recoupment against funds while on deposit in any Project Sub-Account; Berkley reserves any subrogation, equitable, or other rights it may have if it performs or pays any claim under any bond. Because Berkley's claim is contingent and unliquidated (no losses have been paid by Berkley under the bonds as of the Petition Date), no monthly cash adequate-protection payments to Berkley are required at this time; Berkley reserves the right to request additional adequate protection (including monthly cash payments) upon notice and a hearing in the event Berkley funds claims under the bonds or upon any other material change in circumstances.

9. **Automatic Perfection.** The Replacement Liens granted herein shall be valid, binding, enforceable, and automatically perfected upon entry of this Final Order, without the necessity of filing or recording any financing statement, mortgage, or other instrument otherwise required under non-bankruptcy law. Each Secured Lender is authorized (but not required) to file or record any such instruments as it may deem advisable, and the Debtor shall cooperate in their preparation and execution.

10. **Insurance.** The Debtor shall maintain insurance covering its property and operations in accordance with the obligations under the loan, security, and indemnity documents with the Secured Lenders. The Debtor shall name each Secured Lender as loss payee and/or additional insured to the extent required by such documents and shall provide the Secured Lenders with proof of coverage upon request.

11. **Events of Default; Termination.** An "**Event of Default**" shall occur upon (a) any material breach by the Debtor of this Final Order, including without limitation any unauthorized variance from the Budget; (b) the appointment of a chapter 11 trustee or examiner with expanded powers; (c) the conversion of this case to a case under Chapter 7; or (d) the dismissal of this case.

Upon the occurrence of an Event of Default, the Debtor's authority to use Cash Collateral under this Final Order shall terminate upon three (3) business days' written notice from any Secured Lender to the Debtor, the Office of the United States Trustee, and any official committee, during which period the Debtor may seek emergency relief from this Court.

12. **Carve-Out.** The Replacement Liens and Superpriority Claims granted under this Final Order shall be subject and subordinate to a carve-out (the "**Carve-Out**") for (a) unpaid statutory fees of the United States Trustee under 28 U.S.C. § 1930 and any interest thereon; and (b) the accrued and unpaid fees, costs, and expenses of professionals retained by the Debtor and any official committee, in an aggregate amount not to exceed $50,000.00 per month, subject in each case to approval by this Court under 11 U.S.C. §§ 330 and 331.

13. **Section 506(c) Surcharge Waiver.** Subject to the Carve Out and effective upon entry of this Order, the Debtor waives any and all rights under 11 U.S.C. § 506(c) to surcharge the collateral of the Secured Creditors for the reasonable, necessary costs and expenses of preserving, maintaining, protecting, marketing, or selling such collateral. Nothing in this paragraph shall prejudice the rights of any statutory committee or other party in interest, if any, to seek standing to pursue relief under Section 506(c) unless and until such rights are waived by further order of the Court.

14. **Section 552(b) Exception.** Subject to the Challenge Rights and all reservations of rights preserved herein, the Secured Creditors shall be entitled to all rights and benefits of Section 552(b) of the Bankruptcy Code with respect to the proceeds, products, offspring, or profits of any Prepetition Collateral or Postpetition Collateral, and the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to the Secured Creditors with respect to such proceeds, products, offspring, or profits.

15. **Monthly Actual-to-Budget Reporting.** The Debtor shall provide the Secured Creditors with monthly "actual-to-budget" reporting no later than fifteen (15) days after the end of each calendar month during the Budget Period. Such reporting shall include actual receipts and disbursements for the applicable post-petition period, in a format determined by the Debtor, that permits a reasonable comparison of the actual receipts and disbursements in any given month to the monthly projections set forth in the Budget. The Debtor shall also provide such additional information reasonably requested by the Secured Creditors concerning the Budget, use of Cash Collateral, project receipts, and project disbursements, subject to appropriate confidentiality protections if applicable.

16. **Reservation of Rights of Secured Lenders.** The Secured Lenders each reserve all rights, including the right to (a) request additional or different adequate protection, (b) move for relief from the automatic stay, and (c) seek any other relief available under the Bankruptcy Code or applicable non-bankruptcy law. Nothing in this Final Order shall constitute a waiver of, or otherwise impair, any of the Secured Lenders' rights or remedies.

17. **Challenge Rights.** Notwithstanding anything in this Final Order to the contrary, the Debtor's authorization to use Cash Collateral and the adequate protection granted hereunder shall not constitute, and shall not be deemed to constitute, any finding, admission, stipulation, or acknowledgment by the Debtor or the estate as to (a) the validity, extent, priority, perfection, or enforceability of any pre-petition lien, security interest, assignment, or claim asserted by either Secured Lender, including without limitation any lien evidenced by any UCC-1 financing statement or amendment filed by or on behalf of Berkley, or (b) the characterization of any Bonded Contract Proceeds or Contract Balances as property of the estate or as property of Berkley. The Debtor, any statutory committee appointed in this case, and any other party-in-interest with

standing expressly reserve all rights, claims, defenses, counterclaims, and causes of action against either Secured Lender, including without limitation claims arising under 11 U.S.C. §§ 502, 506, 510, 542, 544, 545, 547, 548, 549, 550, and 553, and any claim for equitable subordination, recharacterization, or disallowance (collectively, the "**Challenge Rights**"). Any such Challenge Rights must be asserted by adversary proceeding or contested matter (a) filed by the Debtor no later than thirty (30) days from the date of the Interim Order, (b) by a committee no later than sixty (60) days after the formation of any official committee of unsecured creditors, or, (c) by any other party in interest with standing no later than sixty (60) days after entry of this Final Order; provided, however, that the deadline(s) may be extended by written agreement of the affected Secured Lender or by further Order of this Court. If no timely Challenge is filed within the foregoing period, the pre-petition liens and claims of the applicable Secured Lender shall be deemed valid, binding, perfected, and enforceable solely as against the Debtor and its estate, without prejudice to the rights of any subsequently appointed trustee.

18. **Preservation of 11 U.S.C. § 506(c).** Nothing in this Final Order shall be deemed a waiver by the Debtor or its estate of any rights to surcharge a Secured Lender's collateral for the reasonable, necessary costs and expenses of preserving or disposing of such collateral under 11 U.S.C. § 506(c).

19. **Survival.** The Replacement Liens, Superpriority Claims, and other rights and protections granted to the Secured Lenders under this Final Order shall survive (a) confirmation of any plan of reorganization or liquidation in this case, (b) conversion of this case to a case under any other chapter of the Bankruptcy Code, (c) dismissal of this case, and (d) the appointment of any trustee or examiner, and shall continue in full force and effect notwithstanding any of the foregoing, in accordance with their respective terms and applicable law.

20. **Preservation of Berkley's Surety and Indemnity Rights.** Nothing in this Final Order shall be construed to modify, alter, impair, release, or otherwise affect any rights or remedies of Berkley with respect to any non-debtor party, including without limitation any indemnitor or co-indemnitor under the November 6, 2018 General Agreement of Indemnity (the "**GAI**"), or any rights of Berkley to subrogation, equitable subordination, or any other equitable remedy arising out of or in connection with the Bonded Contracts. Berkley's rights under the GAI shall remain in full force and effect notwithstanding any dismissal, conversion, or substantive consolidation of this case.

21. **No Novation.** This Final Order shall not effect a novation of the Secured Lenders' pre-petition loan, security, or indemnity documents, which shall remain in full force and effect except as expressly modified by this Final Order.

22. **No Control; Not Owner or Operator.** Solely by virtue of agreeing to the use of Cash Collateral by the Debtor or accepting the protections of this Final Order, no Secured Lender shall be deemed to (a) have assumed any liability to any third party, (b) be in control of the Debtor's operations, or (c) be acting as a "responsible person," "owner," or "operator" with respect to the Debtor or its assets, under any federal, state, or local law (including without limitation any environmental law).

23. **No Prejudice to Further Cash Collateral Relief.** Nothing in this Final Order shall prejudice, limit, impair, or otherwise affect the Debtor's right to seek authority to use Cash Collateral beyond the June 24, 2026 budget period by separate motion, notice, and hearing, or such other procedure as may be approved by the Court. All rights of the Secured Lenders, the United States Trustee, any official committee, and all other parties in interest to object to any such further use of Cash Collateral are fully reserved.

24. **Final Relief.** The relief granted herein is granted on a final basis. The Interim Order is superseded by this Final Order, except to the extent expressly preserved herein.

25. **Retention of Jurisdiction.** This Court shall retain exclusive jurisdiction to hear and determine all matters arising from or relating to the interpretation, implementation, or enforcement of this Final Order.

###

Submitted By:

Alexander Lewitt, Esq.
Edelboim Lieberman PLLC
2875 NE 191st St.
Penthouse One
Miami, FL 33180
Telephone: (305) 768-9909
Facsimile: (305) 928-1114

Copy Furnished To:

*Alexander Lewitt, Esq., who is directed to serve a conformed copy of this order on the Master Service List and file a certificate of service with the Court.*