**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**In re:** **Case No. 26-15967-CAP**

**CRAFT CONSTRUCTION COMPANY LLC,** **Chapter 11**

**Debtor.**
_______________________________________/

**CHAPTER 11 PLAN OF RESTRUCTURING OF**
**CRAFT CONSTRUCTION COMPANY LLC**

**Dated: September 5, 2026**

**EDELBOIM LIEBERMAN PLLC**
2875 NE 191st St., Penthouse One
Miami, FL 33180
Telephone: (305) 768 9909
Facsimile: (305) 928 1114
Email: brett@elrolaw.com
Email: alex@elbizlaw.com

*Attorneys for the Debtor and Debtor in Possession*

# ARTICLE I

## INTRODUCTION

Craft Construction Company LLC, the debtor and debtor in possession in the above-captioned Chapter 11 Case, proposes this *Chapter 11 Plan of Restructuring of Craft Construction Company LLC* (the **"Plan"**) pursuant to Sections 1121(a) and 1123 of the Bankruptcy Code.

# ARTICLE II

## DEFINITIONS AND INTERPRETATION

**A. Definitions.** The following terms shall have the respective meanings specified below:

**2.1 "Administrative Expense Claim"** shall mean a Claim for a cost or expense of administration of the Chapter 11 Case of a kind specified in Section 503(b) of the Bankruptcy Code and entitled to priority under Section 507(a)(2) or 507(b) of the Bankruptcy Code, including the actual and necessary costs and expenses incurred on or after the Petition Date through the Effective Date to preserve the Estate and perform the Remaining Contract. Administrative Expense Claims exclude Professional Fee Claims, the Truist DIP Claim, and U.S. Trustee Fees, each of which is separately treated under the Plan. Obligations incurred by the Restructured Debtor after the Effective Date will be paid as provided in the Plan and applicable agreements and will not constitute Administrative Expense Claims solely by reason of being incurred to implement the Plan.

**2.2 "Affiliate"** shall mean an affiliate within the meaning of Section 101(2) of the Bankruptcy Code.

**2.3 "Allowed"** shall mean with respect to a Claim or Interest, the amount and status of that Claim or Interest that (a) are allowed or deemed allowed under the Bankruptcy Code and Bankruptcy Rules, including a timely filed or deemed filed Claim to which no timely Objection is pending; (b) are expressly allowed by the Plan or a Final Order; or (c) are resolved by a settlement or stipulation authorized under the Plan and approved by the Bankruptcy Court to the extent required. Deemed allowance remains subject to a timely Objection and the Claims Resolution Process. Allowance is subject to the applicable limitations of the Bankruptcy Code, including Sections 502 and 503, and does not establish secured status, priority, or entitlement to postpetition interest beyond that permitted by applicable law, the Plan, or a Final Order. A Claim temporarily allowed solely for voting purposes is not thereby Allowed for distribution purposes. An undisputed portion of a partially Disputed Claim is Allowed only to the extent otherwise satisfying this definition.

**2.4 "Assets"** shall mean all right, title, and interest of the Debtor or the Estate in property of every kind and nature, wherever located, including real, personal, mixed, tangible, intangible, and intellectual property, Cash, receivables, retainage, contract rights, Causes of Action, and the proceeds thereof, including such property retained by or vested in the Restructured Debtor under the Plan. Assets include only the interests held by the Debtor or the Estate and remain subject to valid ownership interests, trust fund rights, funds control arrangements, Liens, and other superior property rights preserved by the Plan, applicable law, or a Final Order.

**2.5 "Ballot"** shall mean the form approved by the Bankruptcy Court and distributed to Holders of Claims or Interests entitled to vote to accept or reject the Plan, together with the

instructions accompanying that form.

**2.6** **"Bankruptcy Code"** shall mean Title 11 of the United States Code, 11 U.S.C. § 101, et seq., in effect as of the Petition Date, together with all amendments and modifications thereto to the extent applicable to this Chapter 11 Case.

**2.7** **"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the Southern District of Florida, Fort Lauderdale Division.

**2.8** **"Bankruptcy Rules"** shall mean the Federal Rules of Bankruptcy Procedure and Official Bankruptcy Forms, the Federal Rules of Civil Procedure to the extent applicable to the Chapter 11 Case or a proceeding therein, the Local Rules, and applicable standing orders of the Bankruptcy Court, in each case as amended to the extent applicable.

**2.9** **"Berkley"** shall mean Berkley Insurance Company and its affiliates issuing or participating in bonds for the Debtor's projects.

**2.10** "**Berkley Subrogation Claim"** shall mean a Claim asserted by Berkley by subrogation to the rights of a subcontractor or other claimant in connection with the District Litigation, solely to the extent Berkley is entitled to those rights under applicable law or a Final Order. An Allowed Berkley Subrogation Claim is treated as a District Related Claim to the extent provided for Class 3, with any Allowed unsecured deficiency treated in Class 4. Payments to Berkley and the underlying claimant will be credited as required to prevent duplicate recovery, and the Claim remains subject to applicable allowance and subordination requirements.

**2.11** "**Bonded Contract Proceeds"** shall mean receipts and proceeds arising from the Debtor's bonded construction contracts, including progress payments, retainage, change order payments, and related recoveries, to the extent subject to the project trust fund, funds control, subaccount, or surety provisions of the Cash Collateral Orders or another applicable Final Order. Their ownership, permitted use, and application will be determined under those orders and applicable law; only the unrestricted balance available to the Estate may fund distributions under the Plan.

**2.12** **"Business Day"** shall mean a day other than a Saturday, Sunday, or a day on which commercial banks in Florida are required or authorized to close by law or executive order.

**2.13** **"Cash"** shall mean legal tender of the United States of America and immediately available funds denominated in United States dollars, including funds on deposit and proceeds realized from operations, completion and close out of the Remaining Contract, collections, asset dispositions, or Causes of Action. The characterization of funds as Cash does not determine whether those funds are unrestricted or available for distribution under the Plan.

**2.14** **"Cash Collateral Orders"** shall mean each interim or final order entered by the Bankruptcy Court authorizing the Debtor's use of cash collateral in the Chapter 11 Case, as the same may be amended, supplemented, or superseded.

**2.15** **"Causes of Action"** shall mean collectively, all actions, claims, causes of action, demands, rights, remedies, defenses, counterclaims, crossclaims, rights of setoff or recoupment, and other rights of recovery held by the Debtor or the Estate, whether arising under the Bankruptcy Code or other applicable law, in contract, tort, equity, or otherwise, and whether known or unknown, asserted or unasserted, contingent or noncontingent, matured or unmatured, liquidated or unliquidated, or disputed or undisputed, together with all proceeds thereof. Causes of Action

consist of the Debtor Causes of Action and the Plan Administrator Causes of Action, subject to the separate allocation of authority established by the Plan. Causes of Action exclude any right expressly sold, settled, released, abandoned, or otherwise disposed of pursuant to a Final Order and do not include a right that has expired or does not otherwise exist under applicable law.

**2.16** **"Chapter 11 Case"** shall mean the Debtor's bankruptcy case filed under Chapter 11 of the Bankruptcy Code in the case styled In re Craft Construction Company LLC, Case No. 26-15967-CAP, currently pending before the Bankruptcy Court.

**2.17** **"Claim"** shall mean a claim within the meaning of Section 101(5) of the Bankruptcy Code, including a right to payment or a right to an equitable remedy for breach of performance if that breach gives rise to a right to payment, whether reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.

**2.18** **"Claims Resolution Process"** shall mean the process for reviewing, reconciling, objecting to, estimating, allowing, disallowing, liquidating, reclassifying, reducing, subordinating, expunging, settling, compromising, or otherwise administering and resolving Claims, including related defenses, counterclaims, setoff, and recoupment rights. The Debtor, and after the Effective Date the Restructured Debtor, will retain exclusive authority over that process, subject to applicable Bankruptcy Court approval requirements. The Plan Administrator may seek relief against an Insider or relief ancillary to a Plan Administrator Cause of Action only as provided in the Plan and must coordinate any related Claim Objection with the Restructured Debtor to avoid duplicative proceedings or inconsistent positions.

**2.19** **"Class"** or **"Classes"** shall mean a class or classes of Claims or Interests classified under the Plan pursuant to Section 1122 of the Bankruptcy Code.

**2.20** **"Confirmation"** shall mean entry by the Bankruptcy Court of the Confirmation Order.

**2.21** **"Confirmation Date"** shall mean the date on which the Confirmation Order is entered on the computerized docket maintained by the Clerk of the Bankruptcy Court.

**2.22** **"Confirmation Hearing"** shall mean the hearing conducted by the Bankruptcy Court under Section 1128 of the Bankruptcy Code wherein the Bankruptcy Court shall consider confirmation of this Plan, in accordance with Section 1129 of the Bankruptcy Code, as the same may be continued from time to time.

**2.23** **"Confirmation Order"** or **"Plan Confirmation Order"** shall mean the order entered by the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code, as amended, supplemented, or modified in accordance with applicable law.

**2.24** **"Contract Completion Date"** shall mean the date on which the Restructured Debtor completes the material performance obligations under the Remaining Contract, including material punch list and close out work required for completion under that contract. The Contract Completion Date is presently projected to occur on or about November 28, 2027, but will be determined by actual performance rather than that estimate. Collection of outstanding receivables or retainage, resolution of Claims or litigation, and remaining administration and distributions under the Plan may continue after the Contract Completion Date.

**2.25** **"Creditor"** shall mean a creditor within the meaning of Section 101(10) of the

Bankruptcy Code.

**2.26 "Cure Amount"** shall mean the amount of Cash or other agreed or court-approved performance necessary to cure defaults and compensate for actual pecuniary loss, to the extent required by Section 365(b)(1)(A) and (B) of the Bankruptcy Code, in connection with assumption or assumption and assignment of an Executory Contract or Unexpired Lease, as agreed by the applicable parties or determined by the Bankruptcy Court. Payment of a Cure Amount does not dispense with any separately applicable adequate assurance requirement.

**2.27 "Debtor"** or **"Craft"** shall mean Craft Construction Company LLC, a Florida limited liability company, as debtor and Debtor-in-Possession in the Chapter 11 Case and, when the context requires, as the Restructured Debtor on and after the Effective Date.

**2.28 "Debtor Causes of Action"** shall mean all Causes of Action other than the Plan Administrator Causes of Action, including the District Litigation; project-related contract, construction lien, bond, insurance, indemnity, warranty, collection, and other commercial rights; and Claims objections and related defenses, counterclaims, setoff, and recoupment rights administered through the Claims Resolution Process. The Debtor, and after the Effective Date the Restructured Debtor, will retain sole and exclusive authority to investigate, prosecute, defend, settle, compromise, release, abandon, collect, or otherwise administer the Debtor Causes of Action and their proceeds, subject to the Plan, applicable law, and any required Bankruptcy Court approval. The limited authority of the Plan Administrator to seek relief against an Insider or relief ancillary to a Plan Administrator Cause of Action does not transfer general control of the Claims Resolution Process or the District Litigation to the Plan Administrator.

**2.29 "Debtor-in-Possession"** shall mean the Debtor in its capacity as debtor in possession in the Chapter 11 Case pursuant to Sections 1101, 1107(a), and 1108 of the Bankruptcy Code.

**2.30 "DIP Order"** shall mean the order or orders entered by the Bankruptcy Court authorizing the Debtor's postpetition financing with Truist, together with the financing documents approved thereby, as amended, supplemented, or superseded in accordance with their terms and applicable Bankruptcy Court approval requirements.

**2.31 "Disallowed"** shall mean with respect to a Claim or Interest, or any portion thereof, that the Claim, Interest, or portion has been disallowed by a Final Order or an express provision of the Plan.

**2.32 "Disclosure Statement"** shall mean the Disclosure Statement for Chapter 11 Plan of Restructuring of Craft Construction Company LLC filed in support of the Plan, including its exhibits and supplements, as amended or modified and approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

**2.33 "Disputed"** shall mean with respect to a Claim or Interest, or any portion thereof, that (a) it is neither Allowed nor Disallowed; or (b) it is subject to a timely Objection or request for estimation that has not been withdrawn, resolved by an authorized settlement, or determined by a Final Order. A Claim scheduled as disputed, contingent, or unliquidated is Disputed unless it otherwise becomes Allowed under the Bankruptcy Code, Bankruptcy Rules, Plan, or a Final Order. If only a portion is disputed, the balance may be treated as Allowed to the extent it independently satisfies the definition of Allowed. Authority to administer a Disputed Claim is governed by the Claims Resolution Process.

**2.34 "Distribution"** shall mean a payment or transfer of Cash or other property to a Holder of an Allowed Claim or Interest pursuant to the Plan, made by the Restructured Debtor or the Plan Administrator within the respective authority assigned to each under the Plan.

**2.35 "District 225 Adversary Proceeding"** shall mean the adversary proceeding commenced by the Debtor on July 17, 2026, in the Bankruptcy Court against Parcel C (2022), LLC and Ascot Surety & Casualty Company concerning the District 225 project, asserting contract, unjust enrichment, construction lien, and lien transfer bond claims, together with related claims, counterclaims, defenses, appeals, and enforcement proceedings.

**2.36 "District Claimants"** shall mean the Holders of District Related Claims, including Berkley to the extent it holds an Allowed Berkley Subrogation Claim or other Allowed District Related Claim. Entitlement to any distribution is subject to allowance, the treatment of Class 3, applicable property and subrogation rights, and the prohibition against duplicate recovery.

**2.37 "District Litigation"** shall mean collectively, the District 225 Adversary Proceeding and all related litigation, claims, counterclaims, crossclaims, defenses, offsets, construction lien rights, bond rights, collection rights, appeals, and enforcement proceedings concerning amounts owed to or asserted against the Debtor in connection with the District 225 project, including the Debtor's rights and defenses concerning Parcel C (2022), LLC's Claim No. 37, as amended. The District Litigation constitutes Debtor Causes of Action and will remain under the exclusive control of the Debtor and, after the Effective Date, the Restructured Debtor.

**2.38 "District Related Claim"** shall mean a Claim of a subcontractor directly related to the District Litigation and entitled to direct recovery from its proceeds, together with any related Berkley Surety Claim or Berkley Subrogation Claim arising from the same project obligations, to the extent entitled to the treatment provided for Class 3. Allowed District Related Claims will participate in the net recovery from the District Litigation as provided in the Plan. Any Allowed unsecured portion remaining unpaid after application of that recovery will be treated as an Allowed Class 4 General Unsecured Claim and receive the same Pro Rata distribution percentage as other Allowed Class 4 Claims, subject to credits necessary to prevent duplicate recovery.

**2.39 "Effective Date"** shall mean the Business Day selected by the Debtor, occurring as soon as reasonably practicable after entry of the Confirmation Order, on which (a) the Confirmation Order is effective and not stayed, and the stay imposed by Bankruptcy Rule 3020(e) has expired or has been waived by the Bankruptcy Court; (b) the conditions to effectiveness specified in the Plan and Confirmation Order have been satisfied or waived to the extent expressly permitted; and (c) the Truist DIP Claim has been paid or consensually satisfied and the Debtor has sufficient unrestricted Cash to satisfy the payments and fund the reserves required for the Effective Date. The Effective Date is intended to occur before the Contract Completion Date, and completion of the Remaining Contract is not a condition to effectiveness. The Restructured Debtor will file notice of the Effective Date within five (5) Business Days after its occurrence. Failure to file the notice will not alter the date on which these requirements were satisfied.

**2.40 "Entity"** shall mean an entity within the meaning of Section 101(15) of the Bankruptcy Code.

**2.41 "Equity Interests"** or **"Interests"** shall mean all membership interests and other equity interests in the Debtor, together with all governance, voting, management, control, distribution, and economic rights arising therefrom.

**2.42 "Estate"** shall mean the estate of the Debtor created under Section 541 of the Bankruptcy Code.

**2.43 "Estate Assets"** shall mean Assets of the Estate, including Assets retained by or vested in the Restructured Debtor and Causes of Action and proceeds administered by the Plan Administrator in a representative or fiduciary capacity under the Plan, in each case subject to valid property rights preserved by the Plan, applicable law, or a Final Order. Estate Assets do not include the Plan Administrator's personal property.

**2.44 "Executory Contract"** shall mean a contract to which the Debtor is a party that is subject to assumption or rejection under Sections 365 and 1123 of the Bankruptcy Code.

**2.45 "Filed"** or **"Filing"** shall mean filed with the Bankruptcy Court or its duly authorized claims or noticing agent in the Chapter 11 Case, as applicable.

**2.46 "Final Decree"** shall mean an order entered by the Bankruptcy Court closing the Chapter 11 Case pursuant to Section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022.

**2.47 "Final Order"** shall mean an order or judgment of a court of competent jurisdiction entered on its docket that has not been reversed, vacated, or stayed and for which the time to appeal, seek certiorari, or request a new trial, rehearing, or reconsideration that extends the time for appellate review has expired without such a proceeding remaining pending. If review has been sought, the order or judgment must have been affirmed or left in effect following final disposition of that review, with the time for further review expired. The mere possibility of a motion under Rule 60 of the Federal Rules of Civil Procedure, Bankruptcy Rule 9024, or an analogous rule will not prevent finality, except to the extent a pending motion extends the time for appellate review or the order or judgment is stayed.

**2.48 "General Agreement of Indemnity"** shall mean the general agreement of indemnity executed in favor of Berkley in connection with the issuance of bonds for the Debtor's projects, as amended or supplemented.

**2.49 "General Unsecured Claim"** shall mean a nonpriority unsecured Claim against the Debtor classified or treated in Class 4 under the Plan, including trade, contract, litigation, indemnity, construction defect, deficiency, and similar Claims, and any Allowed unsecured deficiency of a District Related Claim remaining after application of recoveries from the District Litigation. General Unsecured Claims exclude Claims classified and satisfied in another Class or separately treated as Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims, the Truist DIP Claim, or U.S. Trustee Fees. No Estate Distribution will be made on a portion of a Claim limited exclusively to insurance or another non-Estate source by a Final Order, settlement, stipulation, or binding agreement, and all recoveries will be credited as required to prevent duplicate recovery.

**2.50 "Governmental Unit"** shall have the meaning set forth in Section 101(27) of the Bankruptcy Code.

**2.51 "Holder"** shall mean a Person or Entity holding a Claim or Interest, including a successor or transferee recognized under applicable law, the Bankruptcy Rules, and orders of the Bankruptcy Court.

**2.52 "Impairment"** or **"Impaired"** shall have the meaning set forth in Section 1124 of the Bankruptcy Code.

**2.53** **"Insider"** shall mean an insider within the meaning of Section 101(31) of the Bankruptcy Code, including any nonstatutory insider recognized under applicable law.

**2.54** **"Insurance Limited Claim"** shall mean a Claim, or portion of a Claim, for which a Final Order, settlement, stipulation, or binding agreement limits recovery exclusively to applicable insurance proceeds or another specified non-Estate source. Its Holder may pursue only the recovery permitted by that limitation, and no Estate Distribution will be made on account of the restricted portion. This definition does not create a separate Class or enlarge or diminish the rights established by the governing order or agreement.

**2.55** **"Lien"** shall have the meaning set forth in Section 101(37) of the Bankruptcy Code.

**2.56** **"Local Rules"** shall mean the Local Rules of Bankruptcy Procedure for the United States Bankruptcy Court for the Southern District of Florida.

**2.57** **"Net Proceeds"** shall mean Cash proceeds of Assets legally available for distribution after satisfaction of, or adequate reservation for, (a) valid ownership interests, trust fund obligations, funds control requirements, assignments, equitable subrogation rights, Liens, and other superior property rights; (b) Allowed and reasonably estimated Administrative Expense Claims; (c) Allowed Professional Fee Claims and the Professional Fee Reserve; (d) Allowed and reasonably estimated Priority Tax Claims and Other Priority Claims; (e) U.S. Trustee Fees; (f) the Truist DIP Claim and the Allowed Truist Secured Claim; and (g) reasonably necessary costs of performing and closing out the Remaining Contract, Plan Administrator compensation, professional fees, taxes, litigation costs, and other obligations required to be paid or reserved before unsecured Distributions. Net Proceeds remain subject to required Disputed Claim reserves. Proceeds of the District Litigation remain subject to the treatment of Class 3, and proceeds of the Plan Administrator Causes of Action will be administered and distributed by the Plan Administrator within the authority granted by the Plan. No amount will be deducted or reserved twice for the same obligation.

**2.58** **"Objection"** shall mean any objection, application, motion, complaint or any other legal proceeding seeking, in whole or in part, to disallow, determine, liquidate, classify, reclassify, establish the priority of, expunge, subordinate, or estimate any Claim or Interest.

**2.59** **"Other Priority Claim"** shall mean a Claim entitled to priority under Section 507(a) of the Bankruptcy Code and classified in Class 2 under the Plan, excluding Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims, the Truist DIP Claim, and U.S. Trustee Fees.

**2.60** **"Person"** shall mean any individual, corporation, partnership, limited liability company, association, indenture trustee, organization, joint stock company, joint venture, estate, trust, Governmental Unit or any political subdivision thereof, or any other Entity.

**2.61** "**Petition Date"** shall mean May 7, 2026, the date on which the Debtor commenced the Chapter 11 Case.

**2.62** **"Plan"** shall refer to this Chapter 11 Plan of Restructuring of Craft Construction Company LLC, including all appendices, exhibits, schedules, and supplements hereto (including, without limitation, the Plan Supplement), as the same may be amended, supplemented, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

**2.63** **"Plan Administrator"** shall mean Leslie S. Osborne, Esq., of Rappaport Osborne

& Rappaport, P.L., or another independent third-party fiduciary designated by the Debtor by notice Filed before the Confirmation Hearing if Mr. Osborne is unable or unwilling to serve, in each case subject to Bankruptcy Court approval and appointed on the Effective Date. The Plan Administrator will serve as the representative of the Estate under Section 1123(b)(3)(B) of the Bankruptcy Code solely with respect to the Plan Administrator Causes of Action and the administration and distribution of their proceeds. The Plan Administrator will not replace existing management or control the Restructured Debtor's operations, the Remaining Contract, the District Litigation, the Debtor Causes of Action, or the Claims Resolution Process, except for the limited authority expressly provided for relief against an Insider or relief ancillary to a Plan Administrator Cause of Action. References in the Plan to the Plan Administrator's authority over Causes of Action, Claims, Assets, or Distributions are limited to that allocation of authority, subject to the Confirmation Order.

**2.64 "Plan Administrator Causes of Action"** shall mean collectively, (a) all Causes of Action held by the Debtor or the Estate arising under Chapter 5 of the Bankruptcy Code, including state-law fraudulent transfer claims assertable under Section 544 and related avoidance and recovery rights; and (b) all Causes of Action held by the Debtor or the Estate against an Insider, whether arising in contract, tort, law, equity, or otherwise, in each case to the extent preserved and not previously disposed of by Final Order or barred by an applicable limitations period. The Plan Administrator will have exclusive authority to investigate, prosecute, settle, compromise, release, abandon, collect, or otherwise administer those Causes of Action and distribute their proceeds under the Plan. Plan Administrator Causes of Action exclude the District Litigation and the general administration and resolution of Claims, including related defenses, counterclaims, setoff, and recoupment rights, except that the Plan Administrator may seek relief under Sections 502(d), 510, 553, or 558 against an Insider or to the extent ancillary to a Plan Administrator Cause of Action, coordinated with the Restructured Debtor as required by the Plan.

**2.65 "Plan Supplement"** shall mean the supplemental appendix to the Plan containing the applicable documents, schedules, and exhibits Filed with the Bankruptcy Court, including the schedule of Executory Contracts and Unexpired Leases proposed to be assumed, assumed and assigned, rejected, or otherwise treated under the Plan and related proposed Cure Amounts; the material terms of the Plan Administrator's compensation, indemnification, and engagement; and the information required by Section 1129(a)(5) of the Bankruptcy Code. The Debtor may amend or supplement the Plan Supplement through the Effective Date only in accordance with the Plan, the Confirmation Order, applicable law, and applicable notice and approval requirements.

**2.66 "Priority Tax Claim"** shall mean a Claim entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

**2.67 "Pro Rata"** shall mean the proportion that the Allowed amount of a Claim entitled to participate in a particular Distribution bears to the aggregate Allowed amounts of all Claims entitled to participate in that Distribution under the Plan. For purposes of making Distributions and establishing reserves, Disputed Claims entitled to share in the same recovery if Allowed will be included at the amounts reserved or estimated in accordance with the Plan or a Bankruptcy Court order. The calculation will give effect to applicable Class treatment, source-specific recovery rights, prior Distributions, later allowance of Disputed Claims, and credits necessary to prevent duplicate recovery. An Allowed unsecured deficiency of a Class 3 Claim will participate in Class 4 at the same Pro Rata distribution percentage as other Allowed Class 4 Claims.

**2.68 "Professional"** shall mean a Person retained in the Chapter 11 Case pursuant to an order of the Bankruptcy Court under Sections 327, 328, 363, or 1103 of the Bankruptcy Code, as applicable, whose compensation or reimbursement of expenses is subject to Bankruptcy Court approval. A professional retained by the Restructured Debtor or Plan Administrator solely for services after the Effective Date will be compensated as provided in the Plan, Confirmation Order, and applicable engagement terms.

**2.69 "Professional Fee Claim"** shall mean a Claim of a Professional for compensation for services rendered or reimbursement of expenses incurred on or after the Petition Date through the Effective Date, to the extent allowable under the Bankruptcy Code and applicable orders of the Bankruptcy Court. Professional Fee Claims exclude compensation and expenses incurred solely for services after the Effective Date, which are payable under the applicable provisions of the Plan and Confirmation Order.

**2.70 "Professional Fee Reserve"** shall mean the reserve funded by the Debtor on or before the Confirmation Date, as provided in Article III of the Plan, in an amount sufficient to satisfy unpaid Professional Fee Claims reasonably expected to be requested through the Effective Date, net of applicable retainers and other credits, and maintained pending allowance and payment of those Claims.

**2.71 "Proof of Claim"** shall mean a proof of Claim filed against the Debtor in the Chapter 11 Case.

**2.72 "Remaining Contract"** shall mean the Debtor's final operating construction contract to be performed, completed, and closed out by the Debtor and, after the Effective Date, the Restructured Debtor, including related approved change orders and material punch list and close out obligations. Material performance is presently projected to conclude on or about November 28, 2027. The Remaining Contract does not include new construction contracts or projects, and the Plan's financial projections do not assume revenue from new construction contracts.

**2.73 "Restructured Debtor"** or **"Restructuring Debtor"** shall mean Craft Construction Company LLC on and after the Effective Date, continuing in existence under its existing management to perform and complete the Remaining Contract, administer the Claims Resolution Process, pursue and resolve the District Litigation and other Debtor Causes of Action, collect and administer Assets, make Distributions within its authority, and perform its remaining obligations under the Plan. The Plan Administrator's authority is limited to the Plan Administrator Causes of Action and related duties expressly assigned under the Plan. Any reference in the Plan to the Liquidating Debtor refers to the Restructured Debtor in the capacity described in this definition and does not alter that allocation of management and authority. No liquidating trust is created under the Plan.

**2.74 "Restructuring"** shall mean the transactions and activities contemplated by the Plan to maximize recoveries and implement its treatment of Claims and Interests, including performance and close out of the Remaining Contract; collection of receivables, retainage, change order proceeds, refunds, deposits, and other amounts due; any authorized sale of intellectual property or other Assets; administration of the District Litigation and other Debtor Causes of Action by the Restructured Debtor; administration of the Plan Administrator Causes of Action by the Plan Administrator; the Claims Resolution Process; and Distributions under the Plan. The Restructuring will be implemented according to the Plan's allocation of authority, timing

requirements, and preserved property rights.

**2.75 "Schedules"** shall mean the schedules of assets and liabilities and statement of financial affairs Filed by the Debtor in the Chapter 11 Case pursuant to Section 521(a)(1) of the Bankruptcy Code and the Bankruptcy Rules, as amended or supplemented.

**2.76 "Secured Claim"** shall mean a Claim secured by a valid and enforceable Lien on property in which the Estate has an interest, to the extent of the value of the Holder's interest in that property under Section 506(a) of the Bankruptcy Code, or a Claim subject to a valid right of setoff under Section 553 to the extent of the amount subject to setoff, in each case as agreed with the Debtor or Restructured Debtor, expressly provided in the Plan, or determined by a Final Order. Any unsecured deficiency will be treated in the applicable Class. The assertion of secured status in a Proof of Claim, UCC filing, or pleading does not independently establish that status.

**2.77 "Substantial Consummation"** shall mean substantial consummation within the meaning of Section 1101(2) of the Bankruptcy Code, requiring (a) transfer of all or substantially all property proposed by the Plan to be transferred; (b) assumption by the Debtor or its successor under the Plan of the business or management of all or substantially all property dealt with by the Plan; and (c) commencement of Distributions under the Plan.

**2.78 "Truist"** shall mean Truist Bank, in its capacity as prepetition secured lender and as postpetition debtor-in-possession lender to the Debtor.

**2.79 "Truist DIP Claim"** shall mean the Claim of Truist arising under the postpetition financing authorized by the DIP Order, including outstanding principal and any interest, fees, costs, and charges allowed under that order and the approved financing documents, after crediting payments received. The Truist DIP Claim is separately treated under the Plan and is distinct from the Truist Secured Claim.

**2.80 "Truist Secured Claim"** shall mean the Allowed prepetition Claim of Truist solely to the extent secured by a valid and enforceable Lien in Estate property, as determined under the definition of Secured Claim and classified in Class 1 under the Plan. The Truist Secured Claim excludes the Truist DIP Claim and any unsecured deficiency treated in Class 4.

**2.81 "U.S. Trustee"** or **"United States Trustee"** shall mean the United States Trustee responsible for oversight of the Chapter 11 Case in the Southern District of Florida.

**2.82 "U.S. Trustee Fees"** or **"United States Trustee Fees"** shall mean fees payable in connection with the Chapter 11 Case under 28 U.S.C. § 1930(a)(6), together with any applicable statutory interest, through the closing, dismissal, or conversion of the Chapter 11 Case, as required by applicable law.

**2.83 "Unexpired Lease"** shall mean an unexpired lease of real or personal property to which the Debtor is a party and that is subject to assumption, assumption and assignment, or rejection under Sections 365 and 1123 of the Bankruptcy Code.

**2.84 "Unimpaired"** shall mean with respect to a Claim, Interest, or Class, not impaired within the meaning of Section 1124 of the Bankruptcy Code.

## B. Interpretation; Application of Definitions and Rules of Construction.

Any term used but not defined herein shall have the meaning given to it by the Bankruptcy Code or the Bankruptcy Rules, if used therein. The words "herein", "hereof", "hereunder" and

other words of similar import refer to this Plan as a whole, not to a particular section, subsection, paragraph, subparagraph or clause, unless the context requires otherwise. Whenever it appears appropriate from the context, each term stated in the singular or the plural includes the singular and the plural, and each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and the neuter. Captions and headings are for convenience of reference only and shall not affect the interpretation of the Plan. Any reference to a document or instrument being in a particular form or on particular terms means that the document or instrument will be substantially in that form or on those terms.

**C. Reference to Monetary Figures.**

All references in the Plan to monetary figures shall refer to the legal tender of the United States of America, unless otherwise expressly provided.

**D. Controlling Documents.**

In the event of any conflict between the terms and provisions of the Plan and the Disclosure Statement, the terms and provisions of the Plan shall govern and control. In the event of any conflict between the terms and provisions of the Plan, the Plan Supplement, or any other instrument or document created or executed pursuant to the Plan or referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), the Confirmation Order shall govern and control.

## ARTICLE III

## ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS

**3.1. Administrative Expense Claims.**

Except to the extent that the holder of an Allowed Administrative Expense Claim agrees in writing to different treatment, each Allowed Administrative Expense Claim, other than a Professional Fee Claim or the Truist DIP Claim, will be paid in Cash in the full Allowed amount on the Effective Date if the Claim is then Allowed. If an Administrative Expense Claim becomes Allowed after the Effective Date, it will be paid as soon as reasonably practicable after allowance. The Debtor will fund a reserve on or before the Effective Date sufficient to satisfy Allowed and reasonably estimated Administrative Expense Claims. Liabilities incurred in the ordinary course after the Petition Date may be paid in the ordinary course according to their terms, subject to the Bankruptcy Code and applicable Final Orders.

**3.2. U.S. Trustee Fees.**

The Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) within ten (10) days of the entry of the confirmation order for pre-confirmation periods and simultaneously file with the Bankruptcy Court the monthly operating reports for all pre-confirmation periods. Furthermore, each Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) for post-confirmation periods and simultaneously file with the Bankruptcy Court quarterly post-confirmation reports, until the earlier of the closing of the Chapter 11 Case by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another chapter under the Bankruptcy Code. US Trustee fees are estimated to be in the amount of approximately $160,000.00.

**3.3. Professional Fees.**

Professional Fee Claims consist of Claims for compensation and reimbursement of expenses of professionals retained in the Chapter 11 Case. On or before the Confirmation Date, the Debtor will fund a Professional Fee Reserve in an amount sufficient to satisfy unpaid Professional Fee Claims reasonably expected to be requested, net of applicable retainers. Each professional must file its final fee application by the deadline established in the Confirmation Order. Allowed Professional Fee Claims will be paid promptly after allowance by Final Order, after application of any retainer or other credit applicable to that professional.

**3.4. Priority Tax Claims.**

Except to the extent that a holder of an Allowed Priority Tax Claim agrees in writing to different treatment, each holder will receive the treatment required by Section 1129(a)(9)(C) of the Bankruptcy Code. The Debtor presently intends to pay Allowed Priority Tax Claims in full in Cash on the Effective Date to the extent then Allowed and to reserve for any Priority Tax Claim that remains Disputed. Any Priority Tax Claim that becomes Allowed after the Effective Date will be paid promptly after allowance from the applicable reserve, unless the holder agrees to different treatment.

## ARTICLE IV

## CLASSIFICATION OF CLAIMS AND INTERESTS

**4.1. Classification in General.**

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and distribution under the Plan and under Sections 1122 and 1123(a)(1) of the Bankruptcy Code; provided, that a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Allowed Claim or Allowed Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.

**4.2. Summary of Classification.**

The following table designates the Classes of Claims against and Interests in each Debtor and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan; (b) entitled to vote to accept or reject the Plan in accordance with Section 1126 of the Bankruptcy Code; and (c) deemed to accept or reject the Plan. Administrative Expense Claims and Priority Tax Claims have not been classified pursuant to Section 1123(a)(1) of the Bankruptcy Code.

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| 1 | Truist Secured Claim | Impaired | Yes |
| 2 | Other Priority Claims | Unimpaired | No<br>(Presumed to Accept) |
| 3 | District Related Claims<br>(Berkley Subrogation Claims) | Impaired | Yes |
| 4 | General Unsecured Claims | Impaired | Yes |
| 5 | Equity Interests | Impaired | No<br>(Presumed to Reject) |

# ARTICLE V

## TREATMENT OF CLAIMS AND INTERESTS

### 5.1. Truist Secured Claim (Class 1)

(a) *Classification:* Class 1 consists of the Allowed prepetition secured Claim of Truist Bank, solely to the extent secured by a valid and enforceable lien in Estate property.

(b) *Treatment:* On the Effective Date, the Allowed Truist Secured Claim will be paid or otherwise satisfied in full from the collateral securing the Claim and the proceeds thereof and, only to the extent required by the Plan, an agreement with Truist, or Final Order, from other unrestricted Estate Cash. Truist will release its lien upon satisfaction of the Allowed Secured Claim. Nothing in the treatment of Other Priority Claims or any unsecured Claim primes or displaces Truist's valid lien.

(c) *Voting:* Class 1 is Impaired and is entitled to vote to accept or reject the Plan.

### 5.2. Other Priority Claims (Class 2)

(a) *Classification:* Class 2 consists of all Allowed Claims entitled to priority under Section 507(a) of the Bankruptcy Code other than Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims, the Truist DIP Claim, and United States Trustee fees.

(b) *Treatment:* Each holder of an Allowed Class 2 Claim will receive Cash in the full Allowed amount on the Effective Date, or as soon as reasonably practicable after the Claim becomes Allowed if allowance occurs after the Effective Date, unless the holder agrees to different treatment. Class 2 treatment is funded only from unrestricted Estate Cash and does not prime, impair, or alter any valid lien, trust fund right, ownership interest, or other superior property right

(c) *Voting:* Class 2 is Unimpaired and is presumed to accept the Plan. Holders of Class 2 Claims are not entitled to vote.

### 5.3. District Related Claims (Berkley Subrogation Claims) (Class 3)

(a) *Classification:* Class 3 consists solely of any Allowed Claim held by subcontractors whose claims are directly related to and are entitled to direct recovery from the District Litigation proceeds (and Berkley claims arising from bonds issued by Berkley, the General Agreement of Indemnity, indemnity, reimbursement, equitable subrogation, or related surety rights in connection with same).

(b) *Treatment:* Class 3 Allowed Claims shall be satisfied in full by paying all net proceeds from any recovery on account of the District Litigation to holders of Allowed Class 3 Claims *pro rata*. Moreover, to the extent Berkley subrogates and is entitled to receive a distribution on account of an Allowed Class 3 Claim, Berkeley shall be treated as a subrogation claimant, not as a secured creditor merely because of a proof of claim, UCC filing, pleading, or cash collateral order. Any valid ownership, trust, funds control, assignment, equitable subrogation, or similar right in specific project proceeds will be administered according to applicable law and Final Orders. Any Allowed unsecured portion of any Class 3 Allowed Claim (or Berkley subrogation Claim related thereto) remaining after distribution of any net recovery on account of the District Litigation, will be entiled to an Allowed Class 4 General Unsecured Claim and receive the same pro rata distribution percentage from Net Proceeds as Allowed Class 4 General Unsecured Claims. No double recovery is permitted.

(c) *Voting:* Class 3 is Impaired and is entitled to vote to accept or reject the Plan.

**5.4. General Unsecured Claims (Class 4)**

(a) *Classification:* Class 4 consists of all Allowed nonpriority unsecured Claims that are not included in another Class, including trade, contract, litigation, indemnity, construction defect, deficiency, and similar unsecured Claims to the extent Allowed against the Estate.

(b) *Treatment:* Each holder of an Allowed Class 4 Claim will receive Pro Rata distributions of Net Proceeds. Any insurance, surety, bond, owner, trust fund, or other recovery on account of the same liability will reduce the remaining Claim to the extent required to prevent duplicate recovery. No Estate distribution will be made on account of any portion of a Claim for which a Final Order, settlement, stipulation, or binding agreement limits recovery exclusively to insurance or another non-Estate source.

(c) *Voting:* Class 4 is Impaired and is entitled to vote to accept or reject the Plan.

**5.5. Equity Interests (Class 5)**

(a) *Classification:* Class 5 consists of all membership and other Equity Interests in the Debtor.

(b) *Treatment:* Existing Equity Interests will be maintained during the operational period necessary to complete the Remaining Contract. Holders will receive no distribution unless all Allowed Claims, any interest required by applicable law, and all Plan obligations are paid or otherwise satisfied in full and a surplus remains.

(c) *Voting:* Class 5 is Impaired, will receive no property unless a surplus remains after full satisfaction of all senior obligations, and is deemed to reject the Plan under Section 1126(g) of the Bankruptcy Code to the extent it receives no property under the Plan.

## ARTICLE VI

## MEANS FOR IMPLEMENTATION

**6.1. Compromise and Settlement of Claims, Interests, and Controversies.**

Pursuant to Sections 363 and 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a creditor or an Interest Holder may have with respect to any Claim or Interest or any distribution to be made on account of an Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate, and holders of such Claims and Interests, and is fair, equitable, and reasonable.

**6.2. The Contract Completion Process.**

On the Effective Date, the Debtor will become the Restructured Debtor and will continue the operations necessary to perform, complete, and close out the Remaining Contract. The Restructured Debtor presently projects that material performance under the Remaining Contract

will conclude by approximately November 28, 2027. The projections do not assume revenue from new construction contracts.

Existing management will retain authority over the Restructured Debtor's operations, the Remaining Contract, the Claims Resolution Process, the District Litigation, and the Debtor Causes of Action. The Plan Administrator will have no authority over those matters and will have exclusive authority only over the Plan Administrator Causes of Action. The Effective Date is expected to occur substantially before the Contract Completion Date and will not, standing alone, constitute a determination that Substantial Consummation has occurred.

**6.3. <u>Sources of Consideration for Plan Distributions</u>.**

The Plan will be funded from Cash on hand and the net proceeds of Estate assets, including: (i) Cash generated from completion and close out of the Remaining Contract; (ii) collections of accounts receivable, retainage, approved change orders, refunds, deposits, and other contract amounts; (iii) net proceeds of the proposed intellectual property sale; (iv) recoveries from the District 225 adversary proceeding and other retained Causes of Action; (v) insurance and other recoveries that constitute property available to the Estate; and (vi) proceeds from disposition of remaining personal property. Only amounts remaining after satisfaction of valid ownership, trust fund, funds control, lien, and other superior property rights, and after payment or reserve of amounts required to be paid before unsecured distributions, constitute Net Proceeds.

The Plan does not rely on recoveries from the District 225 adversary proceeding, avoidance actions, or insider Causes of Action to fund payments that must be made as a condition to the Effective Date. Before the Effective Date, the Debtor will demonstrate that the Truist DIP Claim has been paid or consensually satisfied and that sufficient unrestricted Cash exists to fund required reserves and other Effective Date obligations.

**6.4. <u>Preservation of Causes of Action</u>.**

Except for a Cause of Action expressly sold, settled, released, abandoned, or otherwise disposed of pursuant to a Final Order, all Causes of Action will be retained and preserved for the benefit of the Debtor and its Estate.

The Plan Administrator will have sole and exclusive authority to investigate, prosecute, settle, compromise, release, abandon, or otherwise administer the Plan Administrator Causes of Action.

The Restructured Debtor will have sole and exclusive authority to investigate, prosecute, defend, settle, compromise, release, abandon, or otherwise administer the Debtor Causes of Action. The Debtor Causes of Action include the District Litigation; project-related contract, lien, bond, insurance, indemnity, warranty, and collection rights; and all Claims objections and related defenses, counterclaims, setoff rights, and recoupment rights. The Restructured Debtor will retain exclusive authority to administer the Claims Resolution Process, including authority to object to, reconcile, estimate, reclassify, reduce, subordinate, expunge, settle, or compromise Claims. The Plan Administrator may seek relief under Sections 502(d), 510, 553, or 558 of the Bankruptcy Code only against an Insider or to the extent such relief is ancillary to a Plan Administrator Cause of Action.

Nothing in the Plan extends an applicable limitations period or creates a Cause of Action that does not otherwise exist.

**6.5. Corporate Governance.**

After the Effective Date, existing management will continue to oversee the operations of the Restructured Debtor, including performance of the Remaining Contract, administration of the Claims Resolution Process, prosecution or resolution of the District Litigation, collection of project receivables, and administration of the Debtor Causes of Action. The Plan Administrator will exercise authority only over the Plan Administrator Causes of Action and distributions attributable to recoveries from those Causes of Action.

Existing Equity Interests will remain outstanding through the Contract Completion Date solely for purposes of the governance and operation of the Restructured Debtor and will thereafter receive the treatment provided for Class 5 under the Plan. Holders of Equity Interests will receive no distribution unless all Allowed Claims, any interest required by applicable law, and all other Plan obligations have been paid or otherwise satisfied in full and a surplus remains.

## ARTICLE VII

## THE PLAN ADMINISTRATOR

**7.1 Appointment.**

The Plan Administrator will be an independent fiduciary responsible for evaluating, pursuing or settling Causes of Action and distributing any recoveries on account of same to creditors in the order of their priority consistent with the Plan. The proposed Plan Administrator is Leslie S. Osborne, Esq. of Rappaport Osborne & Rappaport, P.L. In the event that Mr. Osborne is unable to assume the role of Plan Administrator, the Debtor shall appoint another independent third-party fiduciary, which will be disclosed through a notice of filing prior to the Confirmation Hearing. The Plan Administrator's compensation, indemnification, and engagement terms will be disclosed before Confirmation and will be subject to the Confirmation Order and any other approval required by the Bankruptcy Court.

Mr. Osborne, or another duly appointed independent fiduciary, will be appointed Plan Administrator on the Effective Date following entry of the Confirmation Order and satisfaction or waiver of the conditions to effectiveness. If Mr. Osborne is unable or unwilling to serve, the Debtor may designate another independent fiduciary by notice filed before the Confirmation Hearing, subject to Bankruptcy Court approval. The Plan Administrator will be designated as the representative of the Estate under Section 1123(b)(3)(B) of the Bankruptcy Code solely with respect to the Plan Administrator Causes of Action.

**7.2 Powers.**

The Plan Administrator will be an independent fiduciary appointed under the Plan and Confirmation Order and will be designated as a representative of the Estate within the meaning of Section 1123(b)(3)(B) of the Bankruptcy Code. Without limiting the Plan, the Plan Administrator will be authorized to:

- Prosecute, defend, settle, mediate, appeal, enforce, abandon, or otherwise resolve retained Causes of Action, including the District 225 adversary proceeding;
- Investigate potential insider, avoidance, recovery, recharacterization, and subordination claims to the extent timely preserved and not expired;

- Make interim and final distributions of recoveries on account of the foregoing in accordance with the Plan;
- Retain and compensate professionals as permitted by the Plan and Confirmation Order;
- Pay statutory fees; and
- Execute documents and take all actions reasonably necessary to implement the Plan, and seek entry of a Final Decree.

The Plan Administrator will act in a fiduciary capacity for the benefit of creditors and other parties entitled to distributions under the Plan and will exercise the powers granted by the Plan and Confirmation Order in good faith and in a manner intended to maximize net value. The Plan Administrator does not owe a fiduciary duty to a defendant or potential defendant merely because that person may be affected by the prosecution of a retained Cause of Action.

**7.3 Reporting.**

The Plan Administrator will assist with and coordinate with the Restructured Debtor to file post-confirmation reports required by the United States Trustee and any additional status reports required by the Confirmation Order. The Plan Administrator will make information available to the Bankruptcy Court and parties-in-interest to the extent required by the Plan, the Confirmation Order, or applicable law.

**7.4 Discharge.**

After the Estate has been fully administered, final distributions have been made or provided for, and the Plan Administrator has filed a final report and obtained entry of a Final Decree, the Plan Administrator will be discharged from further duties except for obligations that expressly survive under the Plan, the Confirmation Order, or applicable law. This provision concerns completion of the Plan Administrator's duties and does not grant the Debtor a discharge of debts or release any non-debtor person from liability.

## ARTICLE VIII

## DISTRIBUTIONS

**8.1 Distributions Generally.**

Distributions under the Plan will be made by the Restructured Debtor or the Plan Administrator according to the allocation of authority established by the Plan. The Restructured Debtor will make distributions from the Debtor Causes of Action and other unrestricted Estate property. The Plan Administrator will make distributions only from proceeds of the Plan Administrator Causes of Action.

Before making a distribution to unsecured creditors, the restructured Debor or Plan Administrator will maintain reserves reasonably necessary for Disputed Claims, unpaid Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims, Other Priority Claims, United States Trustee fees, Plan Administrator and professional expenses, taxes, litigation costs, and other obligations required to be paid before unsecured distributions. Distributions will be made only from unrestricted Estate property after giving effect to valid liens, ownership interests, trust fund rights, funds control arrangements, and other superior property rights.

**8.2 Date of Distributions.**

The Restructured Debtor may make an initial distribution as soon as reasonably practicable after the Effective Date if sufficient unrestricted Cash is available after funding all required reserves. Interim distributions may be made thereafter when the Debtor determines that doing so is prudent and economically efficient. The Plan Administrator may make further interim distributions upon a recovery on account of any Cause of Action if the Plan Administrator determines that doing so is prudent and economically efficient. A final distribution will be made after material Estate assets have been monetized and Claims have been resolved or adequately reserved.

**8.3 No Postpetition Interest on Claims.**

Except with respect to the Truist Secured Claim to the extent postpetition interest is Allowed under applicable law or an agreement, and except to the extent otherwise required by applicable law before a distribution may be made to a junior Claim or Equity Interest, no holder of an unsecured Claim will receive postpetition interest under the Plan.

**8.4 Delivery of Distributions.**

Distributions will be sent to the address reflected on the applicable proof of claim, a properly filed notice of transfer, or other written notice received by the Restructured Debtor or Plan Administrator, as applicable. The Restructured Debtor or Plan Administrator may require reasonable tax forms, identification, wire instructions, or other information before making a distribution and will have no liability for a delay caused by a holder's failure to provide requested information.

**8.5 Distributions After Effective Date.**

The Restructured Debtor or Plan Administrator may make periodic distributions after the Effective Date without further Bankruptcy Court order to the extent authorized by the Plan and Confirmation Order. The Restructured Debtor or Plan Administrator is not required to make a distribution if the amount available for a Class or holder is so small that the cost of making the distribution would be unreasonable relative to the amount distributed. Any deferred amount will remain available for a later distribution.

**8.6 Unclaimed Property.**

If a distribution is returned as undeliverable or otherwise remains unclaimed, the Restructured Debtor or Plan Administrator will hold the amount for one hundred eighty days after the date of the original distribution. If the holder does not claim the distribution and provide any reasonably requested information within that period, the holder's right to the unclaimed distribution will be deemed forfeited, the Claim will be treated as satisfied to the extent of that distribution, and the funds will become Net Proceeds available for redistribution, subject to applicable law and the Confirmation Order or distributed to the Bankruptcy Bar Foundation for the Southern District of Florida in the discretion of the Plan Administrator.

**8.7 Time Bar to Cash Payments.**

Any check issued under the Plan will be null and void if not negotiated within ninety days after issuance. A holder may request reissuance by written notice received before the later of one

hundred eighty days after the original issuance date or such other deadline stated in the Confirmation Order. If no timely request is received, the holder will have no further right to the amount represented by the stale check, and the funds will become Net Proceeds available for redistribution or distributed to the Bankruptcy Bar Foundation for the Southern District of Florida in the discretion of the Plan Administrator.

**8.8 Manner of Payment Under Plan.**

At the Restructured Debtor's or Plan Administrator's election, as applicable, distributions may be made by check, ACH, wire transfer, or another commercially reasonable method. The Restructured Debtor or Plan Administrator may establish minimum distribution thresholds and reasonable administrative procedures consistent with the Plan and Confirmation Order. No distribution will be made to the extent prohibited by law, a Final Order, or a binding agreement limiting recovery to insurance or another non-Estate source.

**8.9 Satisfaction of Claims.**

Except as expressly provided in the Plan or a Final Order, distributions and other treatment provided under the Plan will be in full and final satisfaction of the Allowed Claim to the extent of the amount distributed. Nothing in this provision limits preserved rights against a non-debtor insurer, surety, bond, owner, or other third party except to the extent required by applicable law, a Final Order, settlement, stipulation, or binding agreement.

**8.10 Allocation of Distributions Between Principal and Interest.**

To the extent a distribution on an Allowed Claim includes both principal and interest, the distribution will be allocated first to principal and then to interest unless applicable law, a governing agreement, or a Final Order requires a different allocation. Nothing in this provision creates a right to postpetition interest where no such right otherwise exists.

**8.11 No Distribution in Excess of Amount of Allowed Claim.**

No holder will receive distributions on account of an Allowed Claim in an aggregate amount greater than the Allowed amount of that Claim plus any interest expressly Allowed under the Plan or applicable law. Recoveries from insurance, sureties, bonds, owners, trust funds, collateral, settlements, or other sources will be credited to the extent required to prevent duplicate recovery.

## ARTICLE IX

## PROCEDURES FOR DISPUTED CLAIMS

**9.1 Objections to Claims.**

The Restructured Debtor will retain sole and exclusive authority to administer the Claims Resolution Process. On and after the Effective Date, the Restructured Debtor may file, prosecute, settle, withdraw, or otherwise resolve objections to Claims. Unless otherwise provided in the Confirmation Order, the deadline to object to Claims will be one hundred eighty (180) days after the Effective Date, subject to extension for cause by the Bankruptcy Court.

**9.2 Resolution of Disputed Claims.**

A Disputed Claim may be resolved by Final Order, settlement, withdrawal, stipulation, estimation, or another method permitted by the Bankruptcy Code, the Bankruptcy Rules, the Plan,

or the Confirmation Order. The Restructured Debtor may compromise a Disputed Claim subject to any applicable Bankruptcy Court approval requirement.

The Plan Administrator may object to a Claim only to the extent the objection seeks relief against an Insider or is ancillary to the prosecution or resolution of a Plan Administrator Cause of Action. Any such objection must be coordinated with the Restructured Debtor to avoid duplicative proceedings or inconsistent positions.

**9.3 Payments and Distributions with Respect to Disputed Claims.**

No distribution will be required on account of a Disputed Claim unless and until the Claim becomes Allowed; provided, however, that the undisputed Allowed portion of a partially Disputed Claim may receive distributions. The Restructured Debtor may establish reserves for Disputed Claims administered through the Claims Resolution Process. The Plan Administrator may establish reserves only for Claims or liabilities affecting distributions from the Plan Administrator Causes of Action. A reserve may be based on the face amount, an estimated amount, a settlement amount, or another reasonable methodology permitted by the Plan or approved by the Bankruptcy Court.

**9.4 Distributions After Allowance.**

If a Disputed Claim later becomes Allowed, the holder will receive, as soon as reasonably practicable, the distribution that would have been made on the Allowed amount in prior distributions to the applicable Class, subject to the availability of the applicable reserve and without postpetition interest except as expressly required by the Plan or applicable law.

**9.5 Disallowance of Claims.**

A Claim that is disallowed by Final Order will receive no distribution. Any reserve maintained for the disallowed portion of a Claim will be released and will become available for other distributions or expenses under the Plan. Nothing in the Plan permits a proof of claim to establish secured or priority status merely by the holder's characterization of the Claim.

**9.6 Estimation of Claims.**

Before Confirmation, the Debtor may seek temporary allowance of a Claim for voting purposes under Bankruptcy Rule 3018 and may seek estimation under Section 502(c) of the Bankruptcy Code as permitted by law.

**9.7 No Distributions Pending Allowance.**

Except for an undisputed Allowed portion of a Claim, a holder of a Disputed Claim is not entitled to a distribution while the Claim remains Disputed. The Restructured Debtor and Plan Administrator may withhold the disputed amount and maintain an appropriate reserve pending resolution.

**9.8 Claims Resolution Procedures Cumulative.**

The Claims objection, estimation, setoff, recoupment, subordination, recharacterization, disallowance, and settlement rights preserved by the Plan are cumulative and do not limit any other right or defense of the Restructured Debtor. Nothing in the Plan revives an expired Cause of Action or limitations period.

**9.9 Interest.**

Amounts reserved on account of Disputed Claims will not earn interest for the benefit of the holder. If an Allowed Claim is legally entitled to interest, interest will be paid only to the extent and at the rate required by applicable law, agreement, or Final Order.

## ARTICLE X

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Plan Supplement will identify each executory contract and unexpired lease proposed to be assumed, assumed and assigned, rejected, or otherwise treated under the Plan, together with the proposed cure amount, if any. The Debtor anticipates assuming the Remaining Contract and those other contracts and leases reasonably necessary to perform the Remaining Contract, preserve Estate assets, maintain necessary licenses and insurance, collect amounts due, and implement the Restructuring. Any executory contract or unexpired lease not previously assumed or rejected and not designated for assumption or other treatment in the Plan Supplement will be rejected on the Effective Date unless the Bankruptcy Court orders otherwise.

Assumption of any executory contract or unexpired lease will be subject to the cure and adequate assurance requirements of Section 365 of the Bankruptcy Code unless the counterparty agrees to different treatment. A counterparty disputing assumption, cure, or adequate assurance must object by the deadline established by the Bankruptcy Court. Rejection damages Claims must be filed by the deadline and in the manner established by the Plan, Confirmation Order, Bankruptcy Rules, or other Final Order.

## ARTICLE XI

## CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF PLAN

Creditors and Equity Interest Holders concerned with how the Plan may affect their tax liability should consult with their own accountants, attorneys, and/or advisors. This Disclosure Statement does not address the U.S. federal income tax consequences to holders of Claims or equity interests and does not address the consequences of any transactions related to the Plan.

The U.S. federal income tax consequences of the contemplated Plan are complex and subject to significant uncertainties. The Debtor has not requested an opinion of counsel or a ruling from the IRS or any other taxing authority with respect to any tax aspect of the contemplated transactions, and this discussion is not binding upon the IRS or the courts. No assurance can be given that the IRS would not assert, or that a court would not sustain, a different position than a position anticipated by the Debtor.

This Disclosure Statement does not address foreign, state, or local tax consequences of the contemplated transactions, nor does it purport to address the U.S. federal income tax consequences of the transactions to special classes of taxpayers (*e.g.*, foreign taxpayers, small business investment companies, regulated investment companies, real estate investment trusts, banks and certain other financial institutions, insurance companies, tax-exempt organizations, retirement plans, individual retirement and other tax-deferred accounts, holders that are, or hold their Claims through, S corporations, partnerships or other pass-through entities for U.S. federal income tax purposes, persons whose functional currency is not the U.S. dollar, dealers in securities or foreign currency, traders that mark-to-market their securities, persons subject to the “Medicare” tax on net

investment income, persons subject to special accounting rules under Section 451(b) of the Code, and persons whose Claims are part of a straddle, hedging, constructive sale, or conversion transaction). In addition, this discussion does not address U.S. federal taxes other than income taxes.

You are urged to consult your own tax advisor for the U.S. federal, state, local, non-U.S., and other tax consequences applicable under the Plan.

Any tax advice contained in this Disclosure Statement (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of: (i) avoiding tax-related penalties under the IRC; or (ii) promoting, marketing, or recommending to another party any tax-related matter addressed herein.

## ARTICLE XII

## CONFIRMATION REQUIREMENTS & VOTING PROCEDURES

### 12.1 Confirmation Requirements.

To be confirmed, the Plan must satisfy the applicable requirements of Section 1129 of the Bankruptcy Code. Among other things, the: (i) Plan and the Debtor must comply with the applicable provisions of the Bankruptcy Code; (ii) the Plan must be proposed in good faith; (iii) each holder of an Impaired Claim that has not accepted the Plan must receive at least as much as the holder would receive in a hypothetical Chapter 7 liquidation; (iv) the treatment of Administrative Expense Claims, Priority Tax Claims, and Other Priority Claims must comply with Section 1129(a)(9) of the Bankruptcy Code; (v) at least one Impaired Class of Claims must accept the Plan without counting Insider votes if Section 1129(a)(10) of the Bankruptcy Code applies; (vi) all United States Trustee fees then due must be paid; and (vii) Confirmation must not be likely to be followed by liquidation other than the liquidation contemplated by the Plan or by the need for further financial reorganization. If an Impaired Class rejects the Plan, the Debtor may seek Confirmation under Section 1129(b) of the Bankruptcy Code if all applicable requirements are satisfied.

### 12.2 Who May Vote or Object.

Any party in interest may object to Confirmation of the Plan if the party believes the requirements for Confirmation are not met. Many parties-in-interest, however, are not entitled to vote to accept or reject the Plan. A Creditor or Equity Interest Holder has a right to vote for or against the Plan only if that Creditor or Equity Interest Holder has a Claim or Equity Interest that is an: (i) Allowed Claim or Allowed Claim for voting purposes; and (ii) Impaired

### 12.3 Claims Entitled to Vote.

Only a Holder of an Allowed Claim has the right to vote on the Plan. Generally, a Claim is Allowed if: (i) the Debtor has scheduled the Claim on the Debtor's Schedules, unless the Claim has been scheduled as disputed, contingent, or unliquidated; or (ii) the Holder of the Claim has filed a Proof of Claim, unless an objection has been filed to such Proof of Claim. When a Claim is not Allowed, the person or entity holding the Claim cannot vote unless the Bankruptcy Court, after notice and hearing, either overrules the objection or allows the Claim for voting purposes pursuant to Bankruptcy Rule 3018(a).

As noted above, the Holder of an Allowed Claim has the right to vote only if it is in a Class that is Impaired under the Plan. As provided in Section 1124 of the Bankruptcy Code, a Class is

considered Impaired if the Plan alters the legal, equitable, or contractual rights of the members of that Class.

**12.4 Who is Not Entitled to Vote.**

The Holders of the following five types of Claims and Equity Interests are not entitled to vote: (i) Holders of Claims and Equity Interests that have been Disallowed; (ii) Holders of other Claims or Equity Interests that are not "Allowed Claims" (as discussed above), unless they have been "Allowed" solely for voting purposes; (iii) Holders of Claims in Unimpaired Classes; (iv) holders of Claims entitled to priority pursuant to Sections 507(a)(2), (a)(3), and (a)(8) of the Bankruptcy Code (Administrative Claims and Priority Tax Claims); and (v) Holders of Claims in Classes that do not receive or retain any value under the Plan.

**12.5 Who Can Vote in More than One Class.**

A Person or Entity with a Claim that has been Allowed in part as a Secured Claim and in part as an Unsecured Claim, or who otherwise holds Claims in multiple Classes, is entitled to accept or reject the Plan in each capacity and should cast one Ballot for each Claim.

**12.6 Vote Necessary to Confirm the Plan.**

If Impaired Classes of Claims exist, the Bankruptcy Court cannot confirm the Plan unless: (i) at least one Impaired Class of Creditors has accepted the Plan without counting the votes of any Insiders within that Class; and (ii) all Impaired Classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" of non-accepting Classes.

**12.7 Votes Necessary for a Class to Accept the Plan.**

A Class of Claims accepts the Plan if both of the following occur: (i) the Holders of more than one-half (1/2) of the Allowed Claims in the class, who vote, cast their votes to accept the Plan; and (ii) the Holders of at least two-thirds (2/3) in dollar amount of the Allowed Claims in the Class, who vote, cast their votes to accept the Plan. A Class of Equity Interests accepts the Plan if the Holders of at least two-thirds (2/3) in amount of the Allowed Equity Interests in the Class who vote cast their votes to accept the Plan.

**12.8 Treatment of Non-Accepting Classes.**

Even if one or more Impaired Classes reject the Plan, the Bankruptcy Court may nonetheless confirm the Plan if the non-accepting Classes are treated in the manner prescribed by Section 1129(b) of the Bankruptcy Code. A plan or reorganization that binds non-accepting Classes is commonly referred to as a "cram down" plan. The Bankruptcy Code allows the Plan to bind non-accepting Classes of Claims or Equity Interests if it meets all the requirements for consensual Confirmation except the voting requirements of Section 1129(a)(8) of the Bankruptcy Code, does not "discriminate unfairly," and is "fair and equitable" toward each Impaired Class that has not voted to accept the Plan.

## ARTICLE XIII

## EFFECT OF CONFIRMATION OF THE PLAN

**13.1 Vesting of Property of the Estate.**

Except for property previously sold, transferred, settled, released, or otherwise disposed of pursuant to a Final Order, Estate property other than the Plan Administrator Causes of Action will

revest in the Restructured Debtor on the Effective Date, subject to the Plan, the Confirmation Order, and all valid liens, ownership interests, trust fund rights, funds control arrangements, and other property rights preserved by applicable law or Final Order. The Plan Administrator Causes of Action will be retained for the benefit of the Estate and administered exclusively by the Plan Administrator as the Estate's representative under Section 1123(b)(3)(B) of the Bankruptcy Code. Any material transfer expressly proposed by the Plan to occur after the Contract Completion Date will remain subject to the timing provisions of the Plan. The Plan does not create a blanket free-and-clear transfer of property in derogation of preserved rights.

**13.2 Subordinated Claims.**

The allowance and treatment of Claims under the Plan remain subject to any contractual, legal, or equitable subordination enforceable under Section 510 of the Bankruptcy Code or other applicable law. No Claim is subordinated merely because it is held by an Insider or because another party characterizes it as subordinated. Any subordination, reclassification, or altered distribution priority will arise only by agreement, Final Order, or applicable law, and the Plan Administrator may seek appropriate relief from the Bankruptcy Court where necessary.

**13.3 Binding Effect.**

As of the Effective Date, the Plan and Confirmation Order will bind the Debtor, the Restructured Debtor, the Plan Administrator, and all holders of Claims and Interests to the extent provided by Section 1141 of the Bankruptcy Code, whether a holder is Impaired or Unimpaired, voted or failed to vote, accepted or rejected the Plan, or receives a distribution. Upon completion of the payments called for under the Plan, the all claims against the Debtor shall be deemed satisfied in full . The Plan does not grant a nonconsensual third-party release.

**13.4 Term of Injunctions or Stays.**

Unless otherwise provided in the Plan, the Confirmation Order, or another Final Order, Unless otherwise provided in the Plan, the Confirmation Order, or another Final Order, injunctions and stays arising under Sections 105 or 362 of the Bankruptcy Code and in effect on the Confirmation Date will remain in effect through the Effective Date or for the period stated in the applicable order. Upon the Effective Date, existing stay relief orders, including orders limiting particular claimants to insurance, surety, or other non-Estate sources, will remain controlling according to their terms and will not be expanded or diminished by the Plan except as expressly provided in a Final Order.

**13.5 Injunction Against Interference with Plan**

Upon the Bankruptcy Court's entry of the Plan Confirmation Order, all Holders of Claims and Equity Interests, and other parties in interest, shall be enjoined from taking any actions to interfere with the Debtor's and the Plan Administrator's implementation or substantial Consummation of the Plan. Notwithstanding the foregoing, nothing in this Plan or the Confirmation Order shall release any of the Causes of Action.

**13.6 Injunction to Protect Estate Assets**

Except as otherwise provided in the Plan or the Plan Confirmation Order, from and after the Effective Date, all Persons and Entities who have held, hold, or may hold Claims or rights giving rise to any equitable relief against the Assets or any Equity Interests in the Debtor arising prior to the Effective Date are permanently enjoined from taking any of the following actions against the

Estate, restructured Debtor, Plan Administrator, or any of their respective property or Assets (collectively, the "**Estate Assets**") on account of any such Claims or Equity Interests: (a) commencing or continuing, in any manner or in any place, any action or proceeding seeking to collect or to recover in any manner against, or assert control or dominion over, the Estate Assets; (b) enforcing, attaching, collecting, or recovering in any manner against the Estate Assets, any judgment, award, decree or order; (c) creating, perfecting, or enforcing any Lien or encumbrance against the Estate Assets; (d) asserting recoupment unless such recoupment was formally asserted in a timely Filed proof of Claim or in a pleading Filed with the Bankruptcy Court prior to entry of the Plan Confirmation Order (notwithstanding any indication in any proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment) or right of subrogation of any kind against any debt, liability, or obligation due to the Debtors; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of, in connection with or with respect to any such Claims or Interests discharged, released, exculpated, or settled pursuant to the Plan or that is otherwise inconsistent with the provisions of the Plan; provided, however, that such Persons and Entities shall not be precluded from exercising their rights under and consistent with the terms of the Plan, or the Confirmation Order.

**13.7 Solicitation of Plan.**

The Debtor will solicit acceptances and rejections of the Plan only after approval of this Disclosure Statement and in accordance with Sections 1125 and 1126 of the Bankruptcy Code, the Bankruptcy Rules, and the solicitation procedures approved by the Bankruptcy Court. The Debtor and its professionals will be entitled to the protections of Section 1125(e) only to the extent the statutory requirements for those protections are satisfied. Nothing in the Plan creates a broader exculpation or release than permitted by applicable law.

## ARTICLE XIV

## RETENTION OF JURISDICTION

**14.1 Retention of Jurisdiction.**

On and after the Effective Date, the Bankruptcy Court shall retain non-exclusive jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Case for, among other things, the following purposes:

- To allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or interest, including the resolution of any request for payment of any administrative or priority Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of claims;
- To hear and determine settlements and disputes with respect to any Assets, including the Causes of Action;
- To decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to professionals authorized pursuant to the Bankruptcy Code or the Plan;
- To ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan; enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of

the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan or the Disclosure Statement;

- To hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code, including requests for expedited determinations under Section 505(b) relating to tax returns of the Debtor or Restructured Debtor for taxable periods ending on or after the Petition Date;
- To issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with consummation or enforcement of the Plan;
- To determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan or the Disclosure Statement;
- To enter an order or Final Decree concluding or closing the Chapter 11 Case;
- To consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;
- To determine requests for the payment of Claims entitled to priority pursuant to Section 507 of the Bankruptcy Code;
- To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents or instruments executed or deemed executed in connection with the Plan;
- To hear and determine disputes involving the existence, nature, scope, or enforcement of any injunction, release, exculpation, or other protection expressly granted by the Plan or Confirmation Order, subject to applicable law;
- To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;
- To enforce all orders previously entered by the Bankruptcy Court; and
- To hear any other matter not inconsistent with the Bankruptcy Code.

**14.2 Courts of Competent Jurisdiction.**

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XV

## MISCELLANEOUS PROVISIONS

**15.1 Payment of Statutory Fees.**

On the Effective Date and thereafter as required, the Restructured Debtor will pay all fees due under 28 U.S.C. § 1930(a)(6) and any other statutory fees applicable to the Chapter 11 Case. The Restructured Debtor will continue paying such fees and filing required post-confirmation reports until the Chapter 11 Case is closed by Final Decree, dismissed, or converted to another chapter of the Bankruptcy Code.

**15.2 Substantial Consummation.**

The Plan will be substantially consummated when the requirements of Section 1101(2) of the Bankruptcy Code have been satisfied, including commencement of distributions under the Plan. The Debtor anticipates that those events will occur on or shortly after the Effective Date.

**15.3 Plan Modifications.**

Subject to the limitations contained in the Plan, the Debtor reserves the right to amend or modify the Plan before Confirmation in accordance with Section 1127 of the Bankruptcy Code and the Bankruptcy Rules, including modifications necessary to satisfy Section 1129(b) of the Bankruptcy Code. After Confirmation and before substantial consummation, the Plan may be modified only to the extent permitted by Section 1127(b) of the Bankruptcy Code and other applicable law.

**15.4 Governing Law.**

Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflict of laws thereof.

**15.5 Time.**

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

**15.6 Immediate Binding Effect.**

Subject to any stay imposed by the Bankruptcy Court or applicable law, upon the occurrence of the Effective Date the Plan will be effective and enforceable according to its terms and will bind the Debtor, the Liquidating Debtor, the Plan Administrator, holders of Claims and Interests, and their respective successors and assigns to the extent provided by the Bankruptcy Code and Confirmation Order.

**15.7 Deemed Acts.**

Subject to and conditioned on the occurrence of the Effective Date, whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

**15.8 Filing of Final Reports.**

When the Restructured Debtor and the Plan Administrator determine that their respective responsibilities have been completed, material Disputed Claims have been resolved or otherwise provided for, final distributions have been made or provided for, and remaining tax, reporting, and administrative matters have been completed, the appropriate party will file the required final reports and accounting and seek entry of a Final Decree closing the Chapter 11 Case.

**15.9 Notices.**

All notices, requests, and demands to or upon the Debtor or the Liquidating Debtor that are required under the Plan will be in writing and will be effective when delivered in the manner provided by the Plan or Confirmation Order to the following addresses, or to any replacement address designated by a notice filed in the Chapter 11 Case:

**Brett D. Lieberman, Esq.**
**Edelboim Lieberman, PLLC**
2875 NE 191st Street
Penthouse One
Miami, FL 33180
Brett@elbizlaw.com
Alex@elbizlaw.com
Tisha@elbizlaw.com

**Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.**

**CRAFT CONSTRUCTION COMPANY LLC**

*/s/ Barry Craft*
Barry Craft, *as Managing Member*