UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| In re: CRAFT CONSTRUCTION COMPANY, LLC, | Chapter 11<br>Case No. 26-15967-CAP |

the Debtor.

---

**CREDITOR TARAS DIAKIWSKI'S OBJECTION TO DEBTOR'S DISCLOSURE STATEMENT FOR CHAPTER 11 PLAN OF RESTRUCTURING OF CRAFT CONSTRUCTION COMPANY LLC**

Creditor, TARAS DIAKIWSKI ("Diakiwski"), through undersigned counsel and pursuant to 11 U.S.C. § 1125, Federal Rule of Bankruptcy Procedure 3017, and Southern District of Florida Local Bankruptcy Rule 3017-1, objects to the Disclosure Statement for Chapter 11 Plan of Restructuring of Craft Construction Company LLC (the "Disclosure Statement"), ECF 285, filed by the Debtor, CRAFT CONSTRUCTION COMPANY, LLC (the "Debtor"). In support, Diakiwski states as follows:

***Preliminary Statement***

The Disclosure Statement is the latest step in a bad-faith effort to shield the Debtor's principal, Barry Craft, from a decade of litigation and from the consequences of millions of dollars in insider self-dealing and should not be approved. The Disclosure Statement contains no liquidation analysis — the

single most important feature of any disclosure statement. It never identifies or values the remaining construction contract intended to fund the Plan. It devotes a single conclusory sentence to "potential Insider transfer issues," even though the Debtor's own tax returns and bank records document roughly $2.75 million in distributions to Barry Craft from 2020 through 2024, and a $1,000,000 wire to Barry Craft's wife three months before the petition date. It says nothing about the $2,470,675.73 transferred out of the Debtor's Truist account the day before filing bankruptcy. *See* ECF 205 at 35. It says nothing about the near-doubling of Barry Craft's salary that he swore under oath never happened, or about the six-figure salary the Debtor gave Barry Craft's daughter weeks before filing bankruptcy.

Moreover, the Plan the Disclosure Statement describes is patently unconfirmable. The Plan purports to enjoin creditors from reaching a non-debtor's personal equity in the Debtor and attempts to obtain an improper discharge for what is in reality a liquidating limited liability company that cannot receive a discharge under the Bankruptcy Code.

A disclosure statement is supposed to be an instrument of candor. This Disclosure Statement is an instrument of concealment. The Court should decline to approve it until the Debtor cures the deficiencies identified below

and should decline to send creditors to vote on a plan that cannot be confirmed as a matter of law.

### *Jurisdiction and Venue*

1. This Court has jurisdiction under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

2. Venue is proper under 28 U.S.C. § 1409(a).

3. The statutory predicates for the relief requested is 11 U.S.C. § 1125(b).

4. On May 7, 2026, the Debtor voluntarily filed a petition seeking relief under Chapter 11 of the Bankruptcy Code. ECF 1.

5. The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108. ECF 3.

### *Background*

6. The Debtor is a member-managed Florida limited liability company and licensed general contractor. ECF 285, at 5. Barry Craft is its manager and according to the Disclosure Statement holds an 85 percent membership interest, with Ronald Pantophlet holding 10 percent and Shannon Haithcock holding 5 percent. ECF 285, at 6.

7. Diakiwski is a creditor of the Debtor and holds a general unsecured claim in excess of $17 million. Claim 6, at 2. Diakiwski's claim arises from the eleven-year litigation styled *Diakiwski v. Craft Construction Company, LLC and Barry Craft*, Case No. 2015-028846-CA-01, pending in the Circuit Court for the Eleventh Judicial Circuit, Miami-Dade County, Florida (the "State Court Litigation").

8. On April 27, 2021, the jury in the State Court Litigation returned a verdict on liability in favor of Diakiwski and against both the Debtor and Barry Craft for breach of contract, breach of fiduciary duty, fraudulent misrepresentation, negligent misrepresentation, and violation of the Florida Deceptive and Unfair Trade Practices Act. A damages trial was imminent when the Debtor filed for bankruptcy.

9. In the years surrounding and following that verdict, the Debtor made substantial distributions to Barry Craft. The Debtor's Schedule K-1s for Barry Craft show distributions to him totaling $2,748,865.00 from 2020 through 2024.

10. In 2021, the Debtor's distribution to Barry Craft of $1,269,000.00 was more than seven times the company's entire ordinary income of $168,672.00 for that year.

11. In 2023, the same year the Debtor lost $570,952.00, Barry Craft took a $565,092.00 distribution.

12. The Debtor made distributions to its other members as well, and in amounts exceeding those reflected on its tax filings. Shannon Haithcock, the holder of a 5 percent interest, received a $50,000 check dated December 28, 2022, bearing the memo "2022 Distribution," yet the Debtor's 2022 Schedule K-1 for Haithcock's entity, S&B Construction Accounting, LLC, reflects only $16,905.00 in distributions.

13. Ronald Pantophlet, the holder of a 10 percent interest, received a $65,000 check dated January 23, 2024, bearing the memo "2023 Distribution," yet the Debtor listed only $26,992.00 in distributions on Pantophlet's entity, RGDC LLC's 2023 K-1.

14. The Debtor's books also reflect significant insider-debt dealings with Barry Craft. The Debtor's 2020 tax return evidences a $500,000.00 debt repayment to Barry Craft, and its 2024 tax return reflects the amount owed to him increasing to $1,833,742.00. Separately, the Debtor's balance sheets show a "Due to/from Barry Craft" account owing him $333,742.00 as of January 31, 2025, and climbing to $833,742.00 as of April 30, 2025.

15. On February 12, 2026 — less than three months before the petition date — the Debtor wired $1,000,000.00 to Barry Craft's wife, Reina Craft, and wired an additional $31,000.00 to her the following day.

16. On May 6, 2026, the day before the Debtor filed its petition, *see* ECF 1, the Debtor transferred $2,470,675.73 to an unnamed entity or individual. ECF 205 at 38. No explanation of the transfers appears in the Disclosure Statement.

17. On or about April 20, 2026 — mere weeks before filing bankruptcy — the Debtor hired Barry Craft's daughter, Gabrielle Craft, as full-time general counsel at a salary of $150,000. ECF 353 at ¶ 7. Gabrielle Craft has been a barred attorney for less than five years.

18. The Debtor's 2020 tax return reports a salary of $151,200.00 for Barry Craft, and its 2021 through 2024 tax returns report an annual salary of $145,600.00.

19. At Barry Craft's November 20, 2025, deposition in the State Court Litigation — less than six months before the petition date — he testified under oath that his salary had not changed since 2015.

20. In connection with the bankruptcy filing, the Debtor moved for authority to pay pre-petition wages; that motion states that Barry Craft's

biweekly salary was $11,538.46 — approximately $300,000 annualized. ECF 16, at 2. At the May 15, 2026, emergency hearing on the motion that Judge Russin conducted, the Court granted the motion in part, conditioned on the Debtor filing a declaration confirming that its insiders work full time and that their salaries are equal to or less than their pre-petition levels.

21. On October 7, 2026 — months after the May 15, 2026 hearing — the Debtor filed the declaration the Court had required. ECF 353. In it, Barry Craft swears under penalty of perjury that "[n]o [e]mployees or insiders (as that term is defined in the Bankruptcy Code) received an increase in salary immediately prior to the petition date." ECF 353 at ¶ 7.

22. On August 23, 2026, the Debtor's in-house counsel filed a notice of appearance in the State Court Litigation on behalf of the Debtor and Barry Craft. DIN 964, *Diakiwski v. Craft Constr. Co., LLC*, No. 2015-028846-CA-01 (Fla. 11th Cir. Ct.).

23. At this Court's continued hearing on September 29, 2026, on Diakiwski's Motion for Relief from Stay, ECF 15, the Court denied the motion as moot because of the Debtor's agreement with Diakiwski in open court that it will not "object to, contest, or otherwise challenge the allowance

of" Diakiwski's claim. ECF 358 at 2. Accordingly, the Debtor no longer has an interest in the State Court Litigation. *See id.*

24. Despite that agreement, Gabrielle Craft has filed motions in the State Court Litigation solely on behalf of Barry Craft and during regular business hours while being paid by the Debtor out of estate funds. *See* DIN 970, *Diakiwski v. Craft Constr. Co., LLC*, No. 2015-028846-CA-01 (Fla. 11th Cir. Ct. filed on Oct. 7, 2026, at 10:42 AM).

25. The Disclosure Statement mentions none of the aforementioned transfers or boosted compensation — in fact, there is no mention of any insider compensation.

26. On September 4, 2026, the Debtor filed its Chapter 11 Plan of Restructuring of Craft Construction Company LLC (the "Plan"), ECF 286, together with the Disclosure Statement, ECF 285.

27. The Plan is not a plan of reorganization in any ordinary sense. It is a wind-down of the Debtor. ECF 285, at 3 (stating that "the Restructured Debtor will continue the operations necessary to perform, complete, and close out the Remaining Contract, … projected to reach completion by approximately November 28, 2027.").

28. To be sure, "[t]he Plan does not contemplate bidding for or commencing new construction projects." *Id.* The Plan is to be funded from the Debtor's cash on hand, the sale of its remaining personal property, and the sale of its intellectual property. ECF 285, at 15.

29. The Disclosure Statement does not identify or value the "Remaining Contract" on which the Plan depends, describing it only as the Debtor's "final operating construction contracts." ECF 285, at 3, 15.

30. It separately classifies certain "Insurance Limited Claims" within the General Unsecured Claims class without identifying which claimants fall into that class, ECF 285, at 10; states that the hypothetical Chapter 7 liquidation analysis "will be provided through a separate notice of filing," ECF 285, at 27; devotes a single reference to "potential Insider transfer issues that remain subject to investigation," ECF 285, at 10; and acknowledges that the proposed intellectual-property sale is an insider transaction, ECF 285, at 10, 22.

31. Equally concerning, as a wind-down/liquidation plan, the Disclosure Statement should address the reason why the Debtor has budgeted in its (Revised) Cash Collateral Budget (i) $62,500.00 for "Marketing"; and (ii) $250.00/month for "Estimating", all while disclosing

"[t]he Plan does not contemplate bidding for or commencing new construction projects." ECF 285 at 3; *compare* ECF 362 at 3. The Debtor should explain and disclose the nature of this Marketing contract, whether it is an executory contract, and, if so, the business judgment reasons for *not* rejecting the contract when the Debtor proposes to pursue no new construction work.

32. The Plan contains an "Injunction to Protect Estate Assets" that enjoins persons holding claims or rights to equitable relief "against the Assets or *any Equity Interests in the Debtor*," and provides that, upon completion of the payments called for under the Plan, "all claims against the Debtor shall be deemed satisfied in full." ECF 285, at 25–26; ECF 286, §§ 13.3, 13.6 (emphasis added).

33. Diakiwski objects to the Debtor's Disclosure Statement because it lacks adequate information regarding material features of the Plan and because it relates to a Plan that is patently unconfirmable. Proceeding to vote on this Plan would be futile.

## ***Argument***

### *Governing Standard*

Section 1125(b) of the Bankruptcy Code prohibits the solicitation of votes on a Chapter 11 plan until the Court approves a written disclosure

statement as containing "adequate information." 11 U.S.C. § 1125(b). "Adequate information" means "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(a)(1). The plan proponent bears the burden of providing adequate information. *In re Great Circle Park LLC*, No. 25-11767 (MG), 2026 WL 1649785, *6 (Bankr. S.D.N.Y. June 5, 2026).

In *In re Metrocraft Publisher Services, Inc.*, the Bankruptcy Court for the Northern District of Georgia developed a non-exhaustive list of factors that must be disclosed, based on the circumstances of each case, for a disclosure statement to contain adequate information. *In re Metrocraft Pub. Services, Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984). Those factors include, *inter alia*, (1) a description of the available assets and their value; (2) the anticipated future of the company; (3) the estimated return to creditors under a Chapter 7 liquidation; (4) financial information, data, valuations, or projections relevant to the creditors' decision; (5) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers; (6) the future

management of the debtor; and (7) the debtor's relationship with affiliates. *Id.* The inquiry is case-specific, and where an omission goes to the heart of what a creditor needs to value its treatment, approval must be withheld. *See In re Go-Go's Greek Grille, LLC*, 617 B.R. 394, 395–96 (Bankr. M.D. Fla. 2020).

And although confirmation issues are ordinarily reserved for a separate hearing, a court may refuse to approve a disclosure statement describing a plan that is patently unconfirmable because soliciting votes on such a plan would be futile. *In re Valrico Square Ltd. P'ship*, 113 B.R. 794, 796 (Bankr. S.D. Fla. 1990); *see also In re Atlanta W. VI*, 91 B.R. 620, 622 (Bankr. N.D. Ga. 1988); *In re Quigley Co., Inc.*, 377 B.R. 110, 115–16 (Bankr. S.D.N.Y. 2007). This Court has applied that principle to deny approval of a disclosure statement where the accompanying plan could not satisfy section 1129, reasoning that "[s]oliciting votes and seeking court approval on a clearly fruitless venture is a waste of the time of the Court and the parties." *In re Valrico Square Ltd. P'ship*, 113 B.R. at 796.

Measured against these standards, the Disclosure Statement fails to apprise the creditors of adequate information to vote on the Plan. The document withholds the very information section 1125 exists to supply, and it describes a Plan that no amount of supplementation can make

confirmable. Each deficiency set out below is, standing alone, reason to withhold approval; taken together, they show that this is not a good-faith effort to inform creditors but an attempt to shepherd an unconfirmable Plan to a vote while shielding the Debtor's principal from scrutiny.

The Disclosure Statement lacks adequate information in six respects. It omits the liquidation and best-interests analysis that is the centerpiece of any disclosure statement; it never identifies the claimants carved into the "Insurance Limited Claims" class; it neither identifies nor values the single "Remaining Contract" on which the Plan's feasibility depends; it conceals millions of dollars in insider transfers and the avoidance claims they support; it hides the near-doubling of Barry Craft's salary and the new six-figure salary paid to his daughter on the eve of filing; and it concedes an insider intellectual-property sale while withholding its terms. The Disclosure Statement repeatedly substitutes deferral and discretion for the disclosure the Bankruptcy Code demands.

Moreover, the Disclosure Statement describes a patently unconfirmable Plan — one that purports to enjoin creditors from reaching a non-debtor's personal equity and to grant a liquidating limited liability company a discharge the Bankruptcy Code forbids. The Court should

decline to approve the Disclosure Statement until the Debtor proposes a Plan that is confirmable on its face and provides creditors the adequate disclosure that a fiduciary like the Debtor owes.

## I. THE DISCLOSURE STATEMENT LACKS ADEQUATE INFORMATION

a. The Disclosure Statement contains no liquidation or best-interest analysis.

As an initial matter, the Disclosure Statement lacks the most important and basic feature of any disclosure statement: a liquidation analysis. It states only that "[t]he effect of a hypothetical Chapter 7 liquidation on the recovery of holders of Allowed Claims and Interests is set forth in the Liquidation Analysis, which will be provided through a separate notice of filing." ECF 285, at 27.[1]

All the Debtor offers is a bare assertion that Chapter 7 "would likely reduce recoveries." ECF 285, at 27. A puzzling conclusion given the lack of data the Debtor relied on in coming to that conclusion. Even more puzzling considering that the Debtor currently employs two firms as bankruptcy counsel, ECF 181, has its own in-house counsel, ECF 353 at ¶ 7, employs a

---

[1]The introductory disclaimer compounds the problem by referring to a "BEST INTERESTS ANALYSIS ATTACHED HERETO" that is not attached. ECF 285, at 2.

tax accountant, ECF 309, and intends to employ a plan administrator, ECF 285 at 16. Without adequate information about how the Debtor came to that conclusion, the Disclosure Statement fails to provide adequate information. *See* 11 U.S.C. § 1125(a)(1); *In re Metrocraft*, 39 B.R. at 568 (listing "(4) the source of information stated in the disclosure statement" and "(12) the estimated administrative expenses, including attorneys' and accountants' fees" as factors which may be necessary for disclosure statement to have adequate information).

Above that, the liquidation analysis itself is a core component of adequate information, and its omission defeats approval of the Disclosure Statement. *In re Metrocraft Pub. Services, Inc.*, 39 B.R. at 570. Without it, the creditors cannot perform the best-interests comparison that Section 1129(a)(7) requires to confirm the Plan. *See* 11 U.S.C. § 1129(a)(7). The creditors of the impaired classes must be able to determine whether this Plan treats them better than Chapter 7 liquidation. *See id.* And this deficiency is further magnified by the lack of discussion regarding the substantial avoidance recoveries described further below. Without the liquidation analysis, the creditors cannot determine whether Chapter 11 is in their best interest, and candidly, the Debtor's bare conclusion that Chapter 11 is in the

creditors' best interest rings hollow in light of how this Debtor has conducted itself leading up to and during the pendency of this case.

b. The Disclosure Statement does not identify the members of the "Insurance Limited Claims."

The Disclosure Statement separately classifies "Insurance Limited Claims" to avoid an equal-treatment problem within the General Unsecured Claims class, ECF 285, at 10, but it never identifies which claimants fall into that bucket. The Class 4 Creditors cannot assess their own recovery or the dilution of their class without knowing who is carved out and in what amount. Accordingly, the Disclosure Statement lacks adequate information for the Class 4 Creditors to make an informed judgment about the Plan. *See* 11 U.S.C. § 1125(a)(1).

c. The "Remaining Contract" that funds the Plan is never identified or valued.

Next, the Disclosure Statement provides no insight, projections, valuations, or expected profit from one of the few sources of future income that will fund the plan: the "Remaining Contract." *See* ECF 285 at 15. The Remaining Contract is never identified. It is described only as the Debtor's "final operating construction contracts" projected to conclude on November 28, 2027. ECF 285, at 3. The Debtor never names the project, the owner, the

contract price, the remaining scope of work, the expected retainage or payment-application income, any potential setoff claims by the owner for defective or untimely work, or if the job is bonded and by whom.

The feasibility of the Debtor's Plan and the pool of funds available for distribution to the unsecured creditors depends almost entirely on an unnamed and unquantified contract. Accordingly, the Disclosure Statement does not provide the unsecured creditors with an adequate description of the anticipated future of the company. *See In re Metrocraft*, 39 B.R. at 568. Creditors are entitled to know which contracts will fund the Plan, and what each is worth.

d. The Disclosure Statement conceals millions of dollars in insider transfers, and the avoidance claims they support.

Next, the Disclosure Statement fails to disclose (and at worst, conceals) potentially millions of dollars in avoidable fraudulent transfers. The Disclosure Statement must disclose "the actual or projected realizable value from recovery of preferential or otherwise voidable transfers." *In re Metrocraft*, 39 B.R. at 568. Because these transfers would be pursued by a disinterested trustee in a Chapter 7 liquidation, the value of preferential and voidable transfers is a crucial part of the Disclosure Statement's liquidation

test and whether the Plan satisfies the best-interest test. *See* 11 U.S.C. § 1129(a)(7); *see also In re Malek*, 35 B.R. 443, 444 (Bankr. E.D. Mich. 1983) (recognizing that "[t]he disclosure statement must describe fully, completely, and in detail all transactions within insiders. If there are no such transactions Debtors must so state.").

Merely reserving avoidance claims for later prosecution, without describing or valuing them, is inadequate. *In re Divine Ripe, L.L.C.*, 554 B.R. 395, 407–08 (Bankr. S.D. Tex. 2016). In *In re Divine Ripe, L.L.C.*, the court held that the debtor's disclosure statement lacked adequate information because the debtor merely stated that it retains all avoidance claims but did not state the value of any of the retained actions. *Id.* at 407. The court went on to note that disclosure in the debtor's statement of financial affairs, but not the Disclosure Statement is inadequate. *Id.* Even where precise amounts cannot be fixed, "the debtor is not excused from discussing the amount of preferences in approximate terms and setting forth what steps have been taken toward settling or litigating these claims." *In re Metrocraft*, 39 B.R. at 570–71. The Disclosure Statement does none of this.

Instead, the Debtor tells its creditors to go do their own digging and reserves the *exclusive* authority to prosecute such causes of action to the

future Plan Administrator. ECF 285 at 10 ("The Statement of Financial Affairs and Rule 2004 discovery identify potential Insider transfer issues that remain subject to investigation."). The Disclosure statement devotes two sentences to what are potentially *millions* of dollars in fraudulent transfers to insiders of the Debtor. And the Debtor's reference to its own Statement of Financial Affairs might be helpful if it were complete — but it is not. *See* ECF 61 at p. 35 (disclosing "[v]arious insider payments [to Barry Craft] during last 1 year (*amounts in the process of being determined*)) (emphasis added). The Plan's proponent bears the burden to provide adequate information to the creditors. *In re Great Circle Park LLC*, 2026 WL 1649785, at *6. This Debtor provided its creditors a haystack and told them to find the financial needles while it knows full well where they are buried[2].

The Debtor's own records show how much is missing from the Disclosure Statement that its silence conceals. The Debtor's Schedule K-1's for Barry Craft shows distributions to Barry Craft totaling **$2,748,865.00** from 2020 through 2024. The 2021 distribution of $1,269,000 was more than *seven*

---

[2]As yet another example, the Debtor purchased at least one vehicle — a 2026 Chevy Silverado — which the Debtor transferred to Barry Craft shortly before the petition date. *See* ECF 61 at p. 35, § 4.2 (stating that "[v]ehicles transferred during last 1 year (amount(s) in the process of being determined)). The Debtor also funds payments to retirement accounts for Barry Craft, the detail of which is not disclosed.

*times* the company's entire ordinary income of $168,672.00 for the year. And in the same year that the Debtor *lost* $570,952.00 (2023), Barry Craft took a $565,092.00 distribution. All these distributions occurred under the shadow of a favorable jury verdict in favor of Diakiwski and against the Debtor and Barry Craft for breach of contract, breach of fiduciary duty, fraudulent misrepresentation, negligent misrepresentation, and violation of the Florida Deceptive and Unfair Trade Practices Act rendered on April 27, 2021.

And the undisclosed distributions are not limited to Barry Craft. Truist's records reflect transfers to the other members of the Debtor. Ronald Pantophlet, the holder of a 10 percent interest in the Debtor, ECF 285 at 6, received a $65,000 check dated January 23, 2024, and containing the memo "2023 Distribution". However, the Debtor only listed $26,992.00 in distributions on Pantophet's entity, RGDC LLC's 2023 K-1. Shannon Haithcock, the holder of a five percent interest in the Debtor, ECF 285 at 6, received a $50,000 check dated December 28, 2022, with the memo "2022 Distribution". Yet the Debtor's 2022 Schedule K-1 for S&B Construction Accounting, LLC, Haithcock's entity, only reflects distributions in the amount of $16,905.00. All transfers to insiders, and after the Debtor was found liable to Diakiwski by a jury in 2021.

Most egregious of all is the Debtor's **$1,000,000.00 wire to Barry Craft's wife, Reina Craft, on February 12, 2026** — less than three months before the Debtor filed bankruptcy. *See* ECF 1. And because that seven-figure transfer was not enough, the Debtor wired another $31,000.00 to Reina Craft the next day. None of this is disclosed.

Nor does the Disclosure Statement contain the Debtor's insider-debt relationships. The Debtor's 2020 tax return evidences a $500,000 debt repayment to Barry Craft ($1,733,742.00 at the start of 2020, reduced to $1,233,742.00 by year-end). The 2024 tax return evidences an increase in the amount owed up to $1,833,742. Yet separately, the Debtor's balance sheets show a "Due to/from Barry Craft" account owing Barry Craft $333,742.00 on January 31, 2025, and climbing to $833,742.00 as of April 30, 2025. A creditor cannot assess the Debtor's dealings with its principal when the Disclosure Statement omits them entirely.

Whether all these transfers are avoidable is the subject of a different motion. Today, the question is: would the absence of all these potential avoidable transfers from the Disclosure Statement enable the creditors — the general unsecured creditors, particularly — to make an informed judgment about the Plan? *See* 11 U.S.C. § 1125(a)(1). The answer is they cannot. Many

of these transfers occurred within the last four years and are avoidable under Florida's fraudulent transfer statute. 11 U.S.C. § 544(b); Fla. Stat. § 726.110. And because the IRS has appeared in the case, *see* Claim 2, fraudulent transfers in the last six years may also be avoidable. *See In re Kipnis*, 555 B.R. 877, 881 (Bankr. S.D. Fla. 2016) (holding trustee could step into shoes of IRS under 11 U.S.C. § 544(b) and 26 U.S.C. § 6502(a)(1) to pursue fraudulent transfers outside of Florida's four-year of limitations). Regardless, the unsecured creditors are entitled to this information to determine whether the Plan is in their best interest or whether Chapter 7 liquidation is necessary.

The Debtor cannot discharge its disclosure obligation by promising that an independent Plan Administrator will someday investigate. Creditors are voting now, and they are entitled to the approximate amounts of the insider transfers, the identities of the transferees, the status of any investigation, and the Debtor's insider-debt and affiliate relationships.

e. The Disclosure Statement conceals a near-doubling of Barry Craft's salary and adding a new six-figure salary for an insider on the eve of filing bankruptcy.

Unfortunately, millions of dollars in pre-petition insider transfers are not where the concealment ends. Insider compensation is a required component of adequate information. *See In re Malek*, 35 B.R. at 444; *In re*

*Metrocraft*, 39 B.R. at 568. The Disclosure Statement contains no information regarding insider compensation. ECF 285, at 6. For the reasons to follow, the absence of this disclosure is likely downright concealment.

At Barry Craft's November 20, 2025, deposition in the State Court Litigation — less than six months before the petition date — Barry Craft testified under oath that his salary had not changed since 2015. The Debtor's 2020 tax return reports Barry Craft had a salary of $151,200.00 in that year. The 2021 through 2024 tax returns show Barry Craft's annual salary was $145,600.00. Yet the Debtor's own motion requesting this Court's permission to pay pre-petition wages states Barry Craft's biweekly salary was **$11,538.46** — approximately $300,000 annualized. ECF 16 at 2. Not only that, at the emergency hearing on the Debtor's motion, the Court granted the Debtor's motion in part, pending the filing of a declaration stating that the insiders work full time for the Debtor and that salaries are equal to or less than what the standard salaries were pre-petition. That hearing occurred on May 15, 2026. The Debtor waited months to file the declaration. *See* ECF 353 (filed October 7, 2026). In the declaration Barry Craft swears under penalty of perjury that "[n]o [e]mployees or insiders (as that term is defined in the

Bankruptcy Code) received an increase in salary immediately prior to the petition date." ECF 353 at ¶ 7.

Barry Craft swore under oath that he did not boost his salary on the heels of the Debtor's bankruptcy filing. Yet the evidence shows just the opposite. The Debtor may not want its creditors to know, but a reasonable creditor would want to know that the principal's salary — paid from estate funds that would otherwise go to the creditors — doubled shortly before the commencement of this bankruptcy. But it does not end there.

The Disclosure Statement is equally silent about Barry Craft's daughter's belated, six-figure arrival to the Debtor's payroll. Mere weeks before filing bankruptcy, the Debtor hired Barry Craft's daughter, Gabrielle Craft, as full-time general counsel "on or about" April 20, 2026, and gave her a salary of **$150,000**. ECF 353 at ¶ 7. The employment of general counsel by the Debtor:

(i) mere weeks before filing bankruptcy,

(ii) who is also the daughter of the Debtor's principal,

(iii) who has been a barred attorney for less than five years, and

(iv) who is receiving a stout six-figure income

is precisely the sort of insider transaction section 1125 requires a Debtor to disclose to its creditors. *See In re Malek*, 35 B.R. at 444; *In re Metrocraft*, 39 B.R. at 568 (recognizing the future management of the debtor as a factor of adequate information in a disclosure statement). Perhaps of even greater interest to the creditors is the reason for paying Garbrielle Craft to defend Barry Craft in the State Court Litigation despite the Debtor's agreement not to object to Diakiwski's claim. *See* ECF 358 at 2. But for reasons apparent to all, the Debtor stays silent.

f. The Disclosure Statement admits an insider intellectual-property sale but withholds its terms.

And another troubling feature of the Disclosure Statement is its lack of adequate information regarding the Plan's proposed intellectual-property sale — another potential insider transaction. ECF 285, at 10, 22. Having conceded the insider character of the sale, the Debtor must disclose the proposed purchaser, any insider or affiliate relationship, and the valuation basis so that creditors can judge whether the transaction is fair. The creditors have a right to know whether a *sub rosa* or successor-liability challenge is available to them before deciding how to vote on the Debtor's Plan.

g. The Disclosure Statement substitutes deferral and discretion for disclosure.

The recurring theme of the Disclosure Statement is to defer material terms rather than disclose them. The compensation, indemnification, and engagement terms of the Plan Administrator are deferred to "before Confirmation," ECF 285, at 16. As previously discussed, this case has significant avoidance claims that may become the only meaningful recovery for the general unsecured creditors given the proposed treatment of Class 3 claims entitled to net recovery from the District Litigation, and the Debtor's indication that a single contract will be the only source of future income to fund the Plan. *Id.* The Plan Administrator's compensation and terms of engagement are material features of the Plan and without it the Disclosure Statement lacks adequate information. *In re Metrocraft*, 39 B.R. at 568 (recognizing management of the debtor and estimated administrative expenses as factors of adequate information).

The Disclosure Statement also defers the schedule of assumed contracts and cure amounts to a yet-to-be-filed Plan Supplement. ECF 286 at § 2.65. Collectively, these deferrals leave creditors to vote on a moving target. This far from the adequate information section 1125 requires to approve the

Debtor's Disclosure Statement. The Debtor's Disclosure Statement is more than a lack of proper disclosure, it is a concerted attempt to conceal material information from its creditors to protect its insiders.

## II. THE DISCLOSURE STATEMENT DESCRIBES A PATENTLY UNCONFIRMABLE PLAN.

### a. The Plan's injunction reaching Barry Craft's personal equity is unauthorized non-debtor relief.

The Plan's "Injunction to Protect Estate Assets" permanently enjoins all persons holding "Claims or rights giving rise to any equitable relief against the Assets or any Equity Interests in the Debtor" from pursuing those claims, and sweeps in claims "discharged, released, exculpated, or settled pursuant to the Plan." ECF 285, at 26. To the extent that injunction would bar a creditor such as Diakiwski from obtaining a charging order against Barry Craft's personal membership interest, it is an injunction protecting a non-debtor, and it is unauthorized. The Supreme Court has held that the Bankruptcy Code "does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of affected claimants." *Harrington v. Purdue Pharma L. P.*, 603 U.S. 204, 206–07 (2024).

At a minimum, the Debtor must disclose, conspicuously and separately, whether the injunction is intended to reach non-debtor principals' personal interests, and if it is, the Plan is patently unconfirmable. *Id.* Sending creditors to vote on the Plan would be futile. *See In re Valrico Square Ltd. P'ship*, 113 B.R. at 796; *see also In re Atlanta W. VI*, 91 B.R. at 622; *In re Quigley Co., Inc.*, 377 B.R. at 115–16.

b. The Plan's "deemed satisfied in full" language is an impermissible discharge for a liquidating limited liability company.

Additionally, The Plan attempts to achieve a backdoor discharge of the claims against the Debtor. The Disclosure Statement and Plan both provide that, "[u]pon completion of the payments called for under the Plan, the [sic] all claims against the Debtor shall be deemed satisfied in full." ECF 285 at 25; ECF 286, at § 13.3. Moreover, the Plan's improper injunction reaches all claims "discharged, released, exculpated, or settled pursuant to the Plan…." ECF 285, at 26; ECF 286 at § 13.6. However labeled, that is a discharge, and a liquidating limited liability company cannot receive one. 11 U.S.C. § 1141(d)(3).

Confirmation of a plan does not discharge a debtor (i) where the plan liquidates all or substantially all the estate's property, (ii) the debtor does not

engage in business after consummation, and (iii) the debtor would be denied a Chapter 7 discharge under Section 727(a). *Id.* For a limited liability company, the third requirement is automatic, because only individuals receive a Chapter 7 discharge. *Id.* at § 727(a)(1) (providing that "[t]he court shall grant the debtor a discharge, unless — the debtor is not an individual;"). This Plan satisfies all three: (i) the Debtor intends to use its cash on hand, sell its remaining personal property, and sell its intellectual property to fund the Plan, ECF 285 at 15; the Debtor will complete its Remaining Contract and will not pursue additional work, *id.* at 3; and (iii) the Debtor is not an individual, and thus, is ineligible for a Chapter 7 discharge, *id.*

A liquidating debtor cannot accomplish through "satisfaction" or injunction language what the Code forbids it to accomplish through discharge. *See In re Bigler LP*, 442 B.R. 537, 545 (Bankr. S.D. Tex. 2010). In *In re Bigler LP*, the bankruptcy court prohibited the inclusion of an injunction generally barring the commencement or enforcement of any action against a debtor in a liquidating Chapter 11 plan. *Id.* "An injunction preventing the post-confirmation prosecution of claims would certainly operate as a

discharge of the Debtors. Accordingly, it is impermissible under the Code." *Id.*

Here, the Plan's injunction language in section 13.6 and the language in section 13.3 deeming all claims "satisfied in full" upon completion of the Plan is a discharge. *See id.* Regardless of what the Plan's title may say, this is a liquidating plan. The Debtor will not continue business after consummation of the Plan and is liquidating all its assets to fund the Plan. It is not entitled to a discharge. 11 U.S.C. § 1141(d)(3). The Disclosure Statement should not be approved while it describes a Plan with facially impermissible relief. *In re Valrico Square Ltd. P'ship*, 113 B.R. at 796.

***Conclusion***

For the reasons set forth above, the Disclosure Statement does not contain adequate information and describes a Plan that is patently unconfirmable. Approval should be withheld until the Debtor files the liquidation and best-interests analysis with the Disclosure Statement; identifies the Remaining Contract and provides an estimated range of creditor recoveries; attaches financial projections with their supporting assumptions and methods; describes and values the insider transfers and avoidance claims, including the compensation of Barry Craft and Gabrielle

Craft; identifies the members of the Insurance Limited Claims; discloses the terms of the proposed insider intellectual-property sale; and removes the Plan's non-debtor injunction and "satisfied in full" discharge language. Because the Plan described is patently unconfirmable, the Court should decline to approve a Disclosure Statement that would send creditors to vote on it.

WHEREFORE, Creditor, TARAS DIAKIWSKI, respectfully requests that this Honorable Court sustain this Objection, deny approval of the Disclosure Statement until the deficiencies identified herein are cured, and grant such other and further relief as is just and proper.

Dated: October 16, 2026. MOORHEAD LAW GROUP, PLLC

By: */s/ Robert J. Powell*
**ROBERT J. POWELL**
Florida Bar No. 70318
**ETHAN C. GIBSON**
Florida Bar No. 1068831
Moorhead Law Group, PLLC
127 Palafox Place, Suite 200
Pensacola, FL 32502
(850) 466-4093 (Office)
(850) 477-0982 (Fax)
rpowell@moorheadlaw.com
egibson@moorheadlaw.com
heidi@moorheadlaw.com
kblackman@moorheadlaw.com
*Attorneys for Creditor, Taras Diakiwski*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been provided electronically to all parties requesting e-service via the Court's CM/ECF System on October 16, 2026, including the following:

- Robert A. Ader, *Attorney for Lerner 299 NW 25thStreet LLC*
  rader@aderhittlaw.com

- Vincent F. Alexander, *Attorney for The District 225 Condominium Association, Inc.*
  valexander@shutts.com; JGoodwin@shutts.com

- Marcelo Diaz-Cortes, *Attorney for FBD Contracting Group, Inc.*
  md@lklsg.com; tms@lklsg.com

- Daniel Gabuardi, *Attorney for Parcel C (2022), LLC*
  daniel.gabuardi@gtlaw.com

- Robert Stephen Galbo, *Attorney for Parcel C (2022), LLC*
  galbor@gtlaw.com

- Eric S. Golden, *Attorney for Truist Bank*
  egolden@burr.com; mlucca-cruz@burr.com

- Darren M. Grzyb, *Attorney for Berkley Insurance Company*
  dgrzyb@csglaw.com

- Ross R. Hartog, *Attorney for Boca Beach Residences Condominium Association, Inc.*
  rhartog@mrthlaw.com; ecfnotices@mrthlaw.com; ycandia@mrthlaw.com; gruiz@mrthlaw.com; lshortino@mrthlaw.com; msalazar@mrthlaw.com; ebrafman@mrthlaw.com; mrthbkc@gmail.com; rhartog@ecf.courtdrive.com

- Bart A. Houston, Esq., *Attorney for Barry Craft*
  bhouston@houstonroderman.com; dschena@houstonroderman.com

- Aaron M. Jacobs, *Attorney for Arch Specialty Insurance Company*
  ajacobs@butler.legal

- Jason Z. Jones, Esq., *Attorney for JA&M Developing Corp.*
  jjones@joneslawpa.com

- Alcyone Levy, *Attorney for HOVSITE III at Parkland, LLC;* and *HOVNANIAN JV Services Company, LLC*
  alevy@wshblaw.com

- Alexander Lewitt, *Attorney for Debtor*
  alex@elbizlaw.com; tisha@elbizlaw.com; virginia@elbizlaw.com

- Brett D Lieberman, *Attorney for Debtor*
  brett@elrolaw.com; eservice@elrolaw.com; tisha@elbizlaw.com; virginia@elbizlaw.com; denissis@elbizlaw.com

- Bruce E Loren, *Attorney for Craft Construction Company LLC*
  bloren@lorenkeanlaw.com; clucht@lorenkeanlaw.com

- D. Brett Marks, *Attorney for Parc 3363, LLC*
  brett.marks@akerman.com; charlene.cerda@akerman.com

- Aleida Martinez-Molina, A*ttorney for Sunshine Kitchens, LLC*
  Aleida@axslawgroup.com

- Kenneth Mather, *Attorney for Ocean Reef Club, Inc.*
  kmather@gunster.com; jcowzer@gunster.com; mweaver@gunster.com

- James B. Miller, *Attorney for Terrell Duke Masonry, Inc.*
  bkcmiami@gmail.com; jbm@title11law.com

- Stephen J Miller, *Attorney for Berkley Insurance Company*
  jmiller@mills-legal.com; csoltis@mills-legal.com;
  yvazquez@mills-legal.com

- Eules (Seth) A. Mills, Jr., *Attorney for Berkley Insurance Company*
  smills@mills-legal.com; csoltis@mills-legal.com;
  yvazquez@mills-legal.com

- Sundeep K Mullick, *Attorney for Commercial Forming Corp. South; GM&P Consulting and Glazing Contractors, Inc.; Infinite Windows LLC; Larrabee Air Conditioning, Inc. d/b/a Kar & Larrabee Mechanical Contractors; Mousseri Painting, Inc.; PTE Systems International, LLC; Ready Windows Sales & Service Corp.; Triumph Construction & Remodeling Services, Inc.*
  smullick@barthet.com; mmasi@barthet.com; chosein@barthet..com

- Ari Newman, *Attorney for Parcel C (2022), LLC*
  newmanar@gtlaw.com; Melissa.DeLaTorre@gtlaw.com;
  mialitdock@gtlaw.com; miaecfbky@gtlaw.com

- Office of the United States Trustee
  USTPRegion21.MM.ECF@usdoj.gov

- Meily Perez, *Attorney for Four Seasons at Parkland Homeowners Association, Inc.*
  mperez@siegfriedrivera.com

- Dustin Ryan Piercy, *Attorney for Craft Construction Company LLC*
  drp@lss.law; drp@ecf.courtdrive.com; info@shelomith.law;
  zshelomith@ecf.inforuptcy.com; alt@shelomith.law

- Jon Polenberg, *Attorney for Hyvac, Inc.*
  jpolenberg@beckerlawyers.com; tfritz@beckerlawyers.com;
  ydaneshfar@beckerlawyers.com; CourtMail@beckerlawyers.com;
  daperez@beckerlawyers.com; rhossain@beckerlawyers.com;
  tprice@beckerlawyers.com

- David Samole, *Attorney for Grand Station Partners, LLC*
  das@kttlaw.com; rcp@kttlaw.com; ycc@kttlaw.com

- John Schank, *Attorney for United States Trustee*
  john.s.schank@usdoj.gov

- Zach B. Shelomith, *Attorney for Debtor*
  zbs@shelomith.law; info@shelomith.law; alt@shelomith.law; Shelomith.ZachB.B105131@notify.bestcase.com; zshelomith@ecf.inforuptcy.com

- Bradley S. Shraiberg, *Attorney for 199 East Palmetto, LP*
  bss@slp.law; dwoodall@slp.law; dwoodall@ecf.courtdrive.com; pmouton@slp.law; mortman@slp.law

- Richard R Thames, *Attorney for Azure Jacksonville Beach Condominium Association, Inc.*
  rrt@thamesmarkey.law; srb@thamesmarkey.law; brm@thamesmarkey.law; rjs@thamesmarkey.law; keh@thamesmarkey.law

- Rafael Torres, *Attorney for Ascot Surety & Casualty Company*
  rafael.w.torres@gmail.com

- Scott A Zuber, *Attorney for Berkley Insurance Company*
  szuber@csglaw.com

And by U.S. Mail to:

- American Express National Bank
  c/o Becket and Lee LLP
  PO Box 3001
  Malvern, PA 19355-0701

- Jesus I. Labrador Jr.
  7270 NW 12 Street

Suite 100, AET 2 Building
Miami, FL 33126

- Bruce E. Loren
  7121 Fairway Drive
  Suite 104
  Palm Beach Garden, FL 33418

- Skilled Staffing, LLC
  2890 Griffin Road
  Suite 3
  Ft. Lauderdale, FL 33312

*/s/Robert J. Powell*
**ROBERT J. POWELL**